CONTINENTAL BANK, Plaintiff,

v.

NATIONAL CITY BANK, and James J. Saxon, Comptroller of the Currency of the United States, Defendants.

Civ. A. No. C 65–484.

United States District Court
N. D. Ohio, E. D.
Sept. 15, 1965.

Donald W. Hornbeck, R. Hollington, Jr., James Schiller, Cleveland, Ohio, for plaintiff.

Victor DeMarco, Geo. H. Ruldoph, J. L. Griffiths, Cleveland, Ohio, for defendant National City Bank.

Richard S. Beatty, Atty., Dept. of Justice, Washington, D. C., Dominic Cimino, Asst. U. S. Atty., for defendant Saxon.

BATTISTI, District Judge.

Plaintiff, the Continental Bank, is a state bank chartered under the banking laws of the state of Ohio and is engaged in the business of banking with its principal office located at 1375 Euclid Avenue, Cleveland, Ohio. Defendant, National City Bank of Cleveland, is a national banking association with its principal offices at 623 Euclid Avenue, Cleveland, Ohio. Defendant James J. Saxon is Comptroller of the Currency of the United States.

On August 3rd, 1965, Plaintiff filed an action for declaratory judgment. In this action Plaintiff asks that this Court find, inter alia, (1) that Defendant Saxon's issuance of authority to National City Bank to establish a branch at 1401–1501 was illegal and invalid in that the procedure employed by the Comptroller of Currency was, and is, in violation of the Administrative Procedure Act, 5 U. S.C.A. §§ 1001 through 1011 and the Constitution of the United States, and (2) that the decision of the Comptroller of Currency to grant authority to National City Bank to establish a branch at 1401–1501 Euclid Avenue was arbitrary, capricious, an abuse of discretion, and not in accordance with law.

In its complaint Plaintiff also seeks an order enjoining the establishment of any branch office at 1401 through 1501 Euclid Avenue. Underlying this entire action is the Plaintiff's factual contention that economic conditions did not warrant the establishment of a branch bank in the area where the Comptroller authorized the National City branch.

Plaintiff's initial request for an ex parte temporary restraining order was properly denied by Judge Green of this Court.

On August 4, 1965, Plaintiff filed a motion for a preliminary injunction. In the words of this motion, Plaintiff seeks a preliminary injunction:

1. Directing and requiring the Defendant, National City Bank of Cleveland, to cease and desist from operating in any manner a branch bank at 1501 Euclid Avenue, Cleveland, Ohio, during the pendency of this case.

2. Directing and requiring Defendant, National City Bank of Cleveland, to cease and desist from taking any further action to operate a branch at 1401 Euclid Avenue, Cleveland, Ohio, during the pendency of this case.

It should here be noted that the certificate authorizing the establishment of a branch was signed by the Comptroller on July 30, 1965. Pursuant to this authorization, the National City Bank opened a "temporary" branch in a small room in the Bulkley Building on August 2, 1965. This "temporary" office was evidently to be utilized until the permanent branch could be established at certain premises presently occupied by Air France.

The gist of the Plaintiff's argument in support of its motion for a preliminary injunction is: (1) That contrary to law, it has been denied a hearing on National City's request to establish a branch bank, and (2) that the decision of the Comptroller to allow the establishment of such a branch was arbitrary, capricious, and not in accordance with law.

On August 16th and 17th, a hearing was held on the motion for a preliminary injunction. Both prior and subsequent to this hearing, the respective parties have submitted briefs in support of their positions.

All parties agree that the basic statutory provision which permeates this entire action is 12 U.S.C.A. § 36 which provides, in pertinent part, as follows:

"A national bank association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question."

Ohio Revised Code, Section 1103.09, provides in part as follows:

"No branch bank shall be established until the consent of the superintendent of banks has been obtained."

The Plaintiff, as stated above contends that it has been denied a "hearing" upon National City Bank's application for authorization to establish a branch. In this regard, all parties agree that the Federal Administrative Procedure Act, 5 U.S.C.A. §§ 1001 through 1011, is applicable to the Comptroller of Currency. Title 5 U.S.C.A. § 1004 provides for certain procedures to be followed, "In every case of adjudication *required by statute* to be determined on the record after opportunity for an agency hearing. * * *" (Emphasis supplied)

Both defendants in this present action agree that the procedures set forth in Section 1004 were not followed in connection with Defendant National City's application. Furthermore, Plaintiff itself has not claimed that the application of Defendant National City was an adjudication *"required by statute"* to be determined under the procedures set forth in Section 1004 of the Administrative Procedure Act. Rather, Plaintiff contends that while a hearing may not have been required by the Act authorizing the Comptroller to establish or approve branch banks, such a hearing is, however, necessary to satisfy the requirements of procedural due process.

At the hearing on the motion for a preliminary injunction, Mr. Schulist, President of the Continental Bank, testified that he had requested a "hearing" on Defendant National City's application to establish a branch. Such a request had, according to Mr. Schulist, been made both to a Mr. Blanchard, Deputy Comptroller of the Currency, and a Mr. Ellis, Regional Comptroller of the Currency. Mr. Schulist further testified that he requested of Mr. Ellis that he be allowed to see the contents of National City's application for authorization to establish the branch. Mr. Schulist testified that he was adamantly opposed to the branch because it was almost directly across the street from Continental's main office and the economic condition of that part of the city did not warrant the establishment of further banking facilities. According to Mr. Schulist, Mr. Ellis refused to give him the information which had been supplied by National City. Mr. Ellis did, however, give Mr. Schulist a copy of the form which National City was required to fill out and submit to the Comptroller in support of its application to establish a branch. Mr. Schulist also testified that

Mr. Blanchard was willing to accept further information relative to Continental's position on National City's application.

By way of affidavit, Mr. Blanchard has stated that the Plaintiff never made a request for a formal adversary hearing. Further, Mr. Blanchard stated that at no time did Plaintiff make a request to see the application of National City and, further, if such a request had been made it would have been granted.

While the parties have, by way of oral arguments and briefs, placed considerable emphasis on the question of whether the Plaintiff requested a formal adversary hearing, the Court does not feel that this disputed question of fact bears materially upon the disposition of the motion under consideration.

Even assuming that a formal adversary hearing had been requested, the question remains whether, by the denial of such a request, the Plaintiff was thereby denied procedural due process. (In this regard, it seems fairly clear to this Court from the arguments that such formal hearings are, as a practical matter, never afforded. Under such circumstances, a substantial question seems to be presented as to whether a party must make what would appear to be a futile request for such a hearing in order to protect its right to subsequently object to the failure to provide the same.)

As the Court has already noted, and as the parties agree, the statute authorizing the Comptroller to approve branch banks does not require that a hearing be held. The Plaintiff, in urging that a hearing is necessary, contends that without such a hearing it would be denied procedural due process. In Wong Yang Sung v. McGrath, 339 U.S. 33, at pages 48–50, 70 S.Ct. 445, at pages 453–454, 94 L.Ed. 616, the Supreme Court said:

"The Administrative Procedure Act, § 5, establishes a number of formal requirements to be applicable 'In every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing.' The argument here depends upon the words 'adjudication required by statute.' The Government contends that there is no express requirement for any hearing or adjudication in the statute authorizing deportation, and that this omission shields these proceedings from the impact of § 5. Petitioner, on the other hand, contends that deportation hearings, though not expressly required by statute, are required under the decisions of this Court, and the proceedings, therefore, are within the scope of § 5.

"Both parties invoke many citations to legislative history as to the meaning given to these key words by the framers, advocates or opponents of the Administrative Procedure Act. Because § 5 in the original bill applied to hearings required 'by law,' because it was suggested by the Attorney General that it should be changed to 'required by statute or Constitution,' and because it finally, emerged 'required by statute,' the Government argues that the section is intended to apply only when explicit statutory words granting a right to adjudication can be pointed out. Petitioner on the other hand cites references which would indicate that the limitation to statutory hearing was merely to avoid creating by inference a new right to hearings where no right existed otherwise. We do not know. The legislative history is more conflicting than the text is ambiguous.

"But the difficulty with any argument premised on the proposition that the deportation statute does not require a hearing is that, without such hearing, there would be no constitutional authority for deportation. The constitutional requirement of procedural due process of law derives from the same source as Congress' power to legislate and, where applicable, permeates every valid enactment of that body. It was under compulsion of the Constitution that this Court long ago held that an ante-

cedent deportation statute must provide a hearing at least for aliens who had not entered clandestinely and who had been here some time even if illegally. The Court said: 'This is the reasonable construction of the acts of Congress here in question, and they need not be otherwise interpreted. In the case of all acts of Congress, such interpretation ought to be adopted as, without doing violence to the import of the words used, will bring them into harmony with the Constitution.' The Japanese Immigrant Case (Yamataya v. Fisher), 189 U.S. 86, 101 [23 S.Ct. 611, 615, 47 L.Ed. 721].

"We think that the limitation to hearings 'required by statute' in § 5 of the Administrative Procedure Act exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion. We do not think the limiting words render the Administrative Procedure Act inapplicable to hearings, the requirement for which has been read into a statute by the Court in order to save the statute from invalidity. They exempt hearings of less than statutory authority, not those of more than statutory authority. We would hardly attribute to Congress a purpose to be less scrupulous about the fairness of a hearing necessitated by the Constitution than one granted by it as a matter of expediency."

The Plaintiff herein urges that this Court must, if the requirements of procedural due process are to be satisfied, read into the section authorizing the Comptroller to establish branch banks a requirement that the Plaintiff be afforded an opportunity to appear in a formal adversary hearing.

In National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381, the Supreme Court made the following observation relative to procedural due process:

"The Fifth Amendment guarantees *no particular form* of procedure; it protects substantial rights." (Emphasis supplied.)

In Federal Communications Commission v. WJR, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353, the Court stated in part as follows:

"Taken at its literal and explicit import, the (lower) Court's broad constitutional ruling cannot be sustained. So taken, it would require oral argument upon every question of law, apart from the excluded interlocutory matters, arising in administrative proceedings of every sort. This would be regardless of whether the legal question were substantial or insubstantial; of the substantive nature of the asserted right or interest involved; of whether Congress had provided a procedure, relating to the particular interest, requiring oral argument or allowing it to be dispensed with; and regardless of the fact that full opportunity for judicial review may be available.

"We do not stop to consider the effects of such a ruling, if accepted, upon the work of the vast and varied administrative as well as judicial tribunals of the federal system and the equally numerous and diversified interests affected by their functioning; or indeed upon the many and different types of administrative and judicial procedures which Congress has provided for dealing adjudicatively with such interests. It is enough to say that due process of law, as conceived by the Fifth Amendment, has never been cast in so rigid and all-inclusive confinement.

"On the contrary, due process of law has never been a term of fixed and invariable content. This is as true with reference to oral argument as with respect to other elements of procedural due process. For this Court has held in some situations that such argument is essential to a fair hearing, Londoner v. [City & County of] Denver, 210 U.S. 373 [28

S.Ct. 708, 52 L.Ed. 1103], in others that argument submitted in writing is sufficient. Morgan v. United States, 298 U.S. 468, 481 [56 S.Ct. 906, 80 L.Ed. 1288]. See also Johnson & Wimsatt v. Hazen, 69 App.D.C. 151, 99 F.2d 384; Mitchell v. Reichelderfer, 61 App.D.C. 50, 57 F.2d 416.

"The decisions cited are sufficient to show that the broad generalization made by the Court of Appeals is not the law. Rather it is in conflict with this Court's rulings, in effect; that the right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations. Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised. Equally certainly it has left wide discretion to Congress in creating the procedures to be followed in both administrative and judicial proceedings, as well as in their conjunction.

"Without in any sense discounting the value of oral argument wherever it may be appropriate or, by virtue of the particular circumstances, constitutionally required, we cannot accept the broad formula upon which the Court of Appeals rested its ruling. To do so would do violence not only to our own former decisions but also, we think, to the constitutional power of Congress to devise differing administrative and legal procedures appropriate for the disposition of issues affecting interests widely varying in kind."

Further, in Cafeteria and Restaurant Workers, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230, the Court stated that:

"The Fifth Amendment does not require a trial-type hearing in every conceivable case of government impairment of private interest. 'For, though "due process of law" generally implies and includes actor, reus, judex, regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings, * * * yet, this is not universally true.' Den ex dem. Murray's Lessee v. Hoboken Land and Improvement Co., 18 How. 272, 280 [15 L.Ed. 372]. The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. Federal Communications Comm. v. WJR, 337 U.S. 265, 275–276 [69 S.Ct. 1097, 93 L.Ed. 1353]; Hannah v. Larche, 363 U.S. 420, 440, 442 [80 S.Ct. 1502, 4 L.Ed.2d 1307]; Hagar v. Reclamation District No. 108, 111 U.S. 701, 708–709 [4 S.Ct. 663, 28 L.Ed. 569]. ' "(D)ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' It is 'compounded of history, reason, the past course of decisions * * *.' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 162–163 [71 S.Ct. 624, 95 L.Ed. 817] (concurring opinion).

"As these and other cases make clear, consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. Where it has been possible to characterize that private interest (perhaps in oversimplification) as a mere privilege subject to the Executive's plenary power, it has traditionally been held that notice and hearing are not constitutionally required. Oceanic Steam Navigation Co. v. Stranahan, 214 U.S. 320, 340–343 [29 S.Ct. 671, 53 L.Ed. 1013]; United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537 [70 S. Ct. 309, 94 L.Ed. 317]; Jay v. Boyd, 351 U.S. 345, 354–358 [76 S.Ct. 919, 100 L.Ed. 1242]; cf. Buttfield

v. Stranahan, 192 U.S. 470, 497 [24 S.Ct. 349, 48 L.Ed. 525]."

■ Looking now to the "interest" of the Plaintiff in the proceedings by which National City obtained authorization to establish the branch in question—from the evidence before the Court it seems clear that National City's branch will be in competition with the Plaintiff. It has not, however, been shown that the Plaintiff has been given, by state law or otherwise, an "exclusive" license to operate in the particular area involved in this litigation. Further, the operation of the National City's branch in no manner excludes the Plaintiff from operating in that area. Under these particular circumstances, this Court does not believe that procedural due process required that the Plaintiff be given a full blown adversary type hearing or trial on National City's application to establish a branch. That the Comptroller may, in the exercise of his broad and long-standing supervisory powers of the national banks, influence the competitive forces within the banking industry does not, in this Court's opinion, in and of itself require that all banks that might possibly be affected by the action of the Comptroller be given an opportunity to participate in an adversary hearing before such power is exercised. In this regard it is interesting to note the following statement by the Supreme Court in Ashbacker Radio Corp. v. F. C. C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108:

"The public, not some private interest, convenience, or necessity governs the issuance of licenses under the Act. But we are not concerned here with the merits. This involves only a matter of procedure. *Congress has granted applicants a right to a hearing on their applications for station licenses. Whether that is wise policy or whether the procedure adopted by the Commission in this case is preferable is not for us to decide.* We only hold that where two bona fide applications are mutually exclusive the grant of one without a hearing to both deprives the loser of the opportunity which Congress chose to give him." (Emphasis supplied)

To the extent that this Court's views conflict with those of Chief Judge Butler in First National Bank of Smithfield, North Carolina v. First National Bank, 232 F.Supp. 725, this Court respectfully disagrees with and declines to follow the same. In this regard it is noteworthy that Judge Machrowicz has, in the case of Peoples Bank—Trenton v. Saxon (opinion unreported) also declined to follow the "hearing" aspect of the Smithfield decision.

That a bank opposed to an application of another bank to engage in certain activities is not entitled to an adversary hearing on said bank's application does not preclude the opposing bank from all avenues of relief. In Section 1009, U.S. C.A., Title 5, it is provided that:

"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.

"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof."

It is clear, at least in this Circuit, that a competitor bank is, under certain circumstances, clearly entitled to seek judicial review of actions taken by the Comptroller. See: National Bank of Detroit v. Wayne Oakland Bank, 6 Cir., 252 F. 2d 537; Community National Bank of Pontiac v. Saxon, 6 Cir., 310 F.2d 224.

In the present action, the Defendants urge that Plaintiff's claim that the decision of the Comptroller was arbitrary and capricious is not a proper subject for judicial review; that such a determination is a matter solely within the "discretion" of the Comptroller, and is not subject to review.

The Court does not deem it necessary to decide, at this time, whether the actions of the Comptroller are subject to

review on the ground that they are arbitrary, capricious, and an abuse of discretion. However, for the purposes of this motion, the Court will assume that the Comptroller's action is reviewable.

Assuming, then, that the matter at hand is reviewable, the Court must look to the evidence to determine whether there appears to be a probable right to the relief sought. As stated by Professor Moore in Moore's Federal Practice, ¶ 65.04:

> "The award of an interlocutory injunction has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the Plaintiff. But in actions in which only private interests are involved the Trial Court may, in the exercise of its discretion, properly grant an interlocutory injunction when it is satisfied that there is a probable right and a probable danger and the Plaintiff is in substantial need of protection; and that the damage to him, if the injunction is denied, plainly outweighs any foreseeable harm to the Defendant."

■ On the basis of the evidence offered in support of the instant motion, this Court is of the opinion that there has been no adequate showing that a probable right exists. In other words, it does not appear (as the Court noted during oral arguments) to be sufficiently clear from the testimony of Mr. Schulist and Mr. Busse that the Comptroller has abused his discretion and that, therefore, a "probable right" exists.

While the Plaintiff's witnesses have stated that the National City branch will compete with the Plaintiff bank, and while they have further stated that they do not believe that the economic situation in the downtown area involved warrants such a branch, this Court does not believe that this evidence is sufficient to establish a reasonable probability of success in the main action.

It appearing that no probable right has been established, and it further appearing that the relief sought could cause substantial harm to the Defendant, the Court finds that the equities are such that the motion for a preliminary injunction must be, and is, hereby overruled.

This opinion shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.