**WARREN BANK, a Michigan Banking Association, Plaintiff,**

v.

**James J. SAXON, Comptroller of the Currency, U. S. Treasury Department, and National Bank of Warren, a National Banking Association, Defendants.**

Civ. A. No. 28290.

United States District Court
E. D. Michigan, S. D.

Nov. 14, 1966.

Richard S. Beattie, Dept. of Justice, Washington, D. C., Lawrence Gubow, U. S. Atty., Patricia Pernick, Asst. U. S. Atty., Detroit, Mich., for the Government (James Saxon, Comptroller of the Currency).

Fred Gordon, Bizer & Sommers, Detroit, Mich., for defendant National Bank of Warren.

Wallace M. Handler, Lebenbom & Handler, Detroit, Mich., for plaintiff.

### OPINION

TALBOT SMITH, District Judge.

The case before us presents the issue of the judicial reviewability of a decision of the Comptroller of the Currency. The decision litigated is his grant of preliminary approval to the organizers of the National Bank of Warren to open a new national bank in the City of Warren, Michigan. The plaintiff is a state bank, asserting, in its complaint, in part as follows:

6. That Plaintiff is informed and verily believes that said charter was granted improperly in that the defendant Comptroller of the Currency did not properly follow the procedures of the Statute and of the Administrative Code in such case made and provided.

7. That Defendant Comptroller of the Currency has abused his discretion and acted arbitrarily and capriciously in granting said charter in that said Comptroller of the Currency did not, your Plaintiff is informed and verily believes, properly investigate the convenience and needs of the community with reference to the formation of said bank. Further, that the Defendant, Comptroller of the Currency has abused his discretion with reference to the banking ability and experience of the proposed officers and other employees.

8. That Plaintiff is informed and verily believes that said newly chartered NATIONAL BANK OF WARREN is not necessary, nor is the same convenient or required in the City of Warren or the environs. Further, Plaintiff is informed and verily believes that the employees hired by the proposed NATIONAL BANK OF WARREN are without substantial experience. Further, your Plaintiff is informed and verily believes that the Defendant Comptroller of the Currency has acted arbitrarily and capriciously in determining the earning prospects of the proposed bank.

9. That your Plaintiff is informed and verily believes that the NATIONAL BANK OF WARREN is in truth and in fact an alter ego of an existing national banking association, which existing association is forbidden by the laws of the State of Michigan to place branches in the City of Warren, Macomb County, Michigan.

On July 7, 1966 the court heard arguments by the parties respecting, primarily, the motion of defendant Saxon to dismiss the complaint upon grounds stated. Such motion was denied. Immediately thereafter the parties stipulated and agreed that the defendants would "file as soon as possible a motion of Summary

Judgment based upon the administrative record in this case", providing for stay of discovery pending ruling thereon, subject to "right reserved to the plaintiff to move for discovery after receiving" such motion, the defendant bank agreeing, as well, not to open for business until decision on such motion was had.

Defendant Saxon's motion for summary judgment was filed on September 29, 1966 and noticed for hearing on October 17, 1966, time for hearing being extended upon motion, and over opposition, to October 31, 1966.

■ We do not believe that any useful purpose would be served by attempting to write a dissertation upon the exercise of discretion by an administrative official in this sensitive and complex field of banking. The cases are legion and some of the more significant for our purposes are listed in the footnote.[1] A review of the statutes involved clearly demonstrates that the Comptroller has been vested with a broad discretion, the situation being well stated in Davis, 1 Administrative Law Treatise, Sec. 4.04, p. 251, in the following terms:

"The critical process in the federal control of banking is the supervising power, not adjudication or rule making. The supervising power is not and probably cannot be surrounded by procedural safeguards in formal hearings, and it is largely immune from the check of judicial review. Freedom from arbitrary or unfair administrative action must depend upon factors other than formal procedures or judicial review."

The courts have, in the main, consistently recognized the wide area of discretion possessed by federal banking authorities. Thus in Adams v. Nagle, 303 U.S. 532, 58 S.Ct. 687, 82 L.Ed. 999

(1938), the Supreme Court held that the Comptroller had unreviewable discretion to levy assessments against shareholders of national banks even if he acted upon a mistake of fact or law.

"Where a statute vests no discretion in an executive officer but to act under a given set of circumstances, or forbids his acting except upon certain named conditions, a court will compel him to act or to refrain from acting if he essays wholly to disregard the statutory mandate; but if a discretion is vested in him, and he is to act in the light of the facts he ascertains and the judgment he forms, a court cannot restrain him from acting on the ground that he has exceeded his jurisdiction by reason of an error either of fact or law which induced his conclusion." 303 U.S. at 542, 58 S.Ct. at 693.

■ The fact that the Comptroller is "largely immune" from judicial review (Davis, Administrative Law Treatise, supra) does not mean, of course, that his immunity is absolute. Upon a proper showing (Bank of Dearborn v. Saxon, 244 F.Supp. 394 (D.C.Mich.1965) a review de novo will be made. But first a foundation must be laid, and with that we proceed to a detailed examination of what the parties have put before us.

As noted above, immediately after the hearing on July 7th the parties stipulated that a legal test of the issues before us would be brought on by defendants' motion for summary judgment, the defendant bank agreeing not to attempt to open for business until decision upon such motion, the plaintiff reserving the right "to move for" further discovery after receiving defendants' said motion. Our disposition of the further discovery motion will be discussed in due course.

1. Continental Bank v. National City Bank, 245 F.Supp. 684 (N.D.Ohio, 1965); First National Bank of Southfield v. Saxon, 352 F.2d 267 (C.A. 4th, 1965); American Bank and Trust Co. v. Saxon, 248 F.Supp. 324 (W.D.Mich.1965); Citizens National Bank of Maplewood v. Saxon, E.D.Mo., (1965) 249 F.Supp. 557; Trust Co. of N.J. v. Saxon, D.N.J. No. 532–63 (Sept. 9, 1963); Citizens Bank of Hattiesburg v. Saxon, S.D.Miss. N.D. 1898 (Mar. 3, 1966); see, also, Judge Freeman's Community National Bank of Pontiac v. Gidney, 192 F.Supp. 514 (D.C.1961), aff'd 310 F.2d 224 (6 Cir., 1962); Whitney National Bank v. Bank of New Orleans, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386.

■■ The purpose of the motion for summary judgment, of course, is to pierce the allegations of the pleadings and to determine whether the movant is entitled to judgment as a matter of law, or whether there is a genuine issue as to material facts. To this end the motion for summary judgment enables the parties to go beyond the pleadings and present evidentiary materials to the court. The plaintiff bank has supported its opposition to the motion by a brief, by extensive affidavit, and by other materials. Before considering the contents thereof we note the provisions of Rule 56(e), Federal Rules of Civil Procedure, requiring, in part, as follows:

" * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

What we have, at this point is this: The allegations of the complaint, as quoted above, are not only vague, but they are completely devoid of specific factual allegations, consisting entirely of conclusory allegations. Thus, it is said that the charter was "granted improperly" in that the defendant "did not properly follow the procedures of the Statute and of the Administrative Code", but what procedures he did not follow are not stated. It is alleged also that the defendant has acted arbitrarily and capriciously in that he did not "properly investigate the convenience and needs of the community with reference to the formation of said bank", but in what respects his investigation was faulty we are not told. It is further asserted that the defendant has abused his discretion "with reference to the banking ability and experience of the proposed officials and other employees" but what factual needs constitute such abuse are not spelled out.

In addition, it is asserted that the newly chartered National Bank "is not necessary, nor is the same convenient or required in the City of Warren or its environs," that the employees of the proposed bank "are without substantial experience", and that the defendant has further acted "arbitrarily and capriciously in determining the earning prospects of the proposed bank." Finally, it is alleged that the National Bank is "in truth and in fact an alter ego of an existing National banking association" but of what national banking association we are not informed nor is there any statement of specific facts which would bring into play, if applicable, the alter ego doctrine.

The theory of the plaintiff in so pleading was made clear upon oral argument at the hearing of July 7, 1966. In response to the defendant's arguments that the complaint failed to state a claim upon which relief could be granted, that the court had no jurisdiction of the subject matter in so far as certain allegations of the complaint were concerned, and that the plaintiff was without standing to challenge the Comptroller's action, the plaintiff replied that needs and convenience of the community had not been taken into consideration by the Comptroller, and, if so, that discretion with respect thereto had been abused, plaintiff offering to show the court that there were some 34 banks "in the Warren area" as well as savings and loan associations, and that "the court should investigate this". Position of counsel was that the District Court should determine, upon a trial, "whether the needs of the community of the City of Warren and its environs are properly being served, whether we need another bank." Counsel conceded that the allegations with respect to the procedures followed by the defendant "are bare, but we believe * * * that if we are permitted to depose the individuals involved in this investigation we will be able to show properly that certain procedures herein were not followed which, over a long period of time, have been followed by the Comptroller."

■■ Faced with a challenge by a motion for summary judgment, the party opposing the movant must demonstrate a triable issue of fact. Even though dismissal of the complaint for failure to state a claim upon which relief can be granted is not warranted, a summary judgment may still be available. Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (2d Cir. 1964). As Moore puts it "stubborn reliance upon allegations and denials in the pleadings will not alone suffice, when faced with materials showing the absence of triable issues of fact." [2]

Plaintiff, however, did not so stubbornly rely. Among other matters, the affidavit above mentioned, was furnished. It purported to show the court that there was no need for another bank in the area, and, particularly, that "there appears to be no need for any additional competition". It points out the difficulties of the small bank in obtaining experienced personnel, the so-called "profit squeeze" in the banking business, and its effect upon certain banks, and the fact, as asserted, that many branch banks are not banks in the orthodox sense but merely check cashing centers. What it all boils down to is that the deponent vigorously disagrees with the Comptroller respecting the establishment of another bank in this area.

The other side of the coin is presented by the administrative files of defendant Saxon with respect to the establishment of the new bank, which have been submitted. It is clear therefrom that he considered the growth of the county in which the proposed bank was to be located, the growth of the community involved, the prospect for continued growth, and the need for new banking facilities. He took into account the building activity in the county, the assessed valuation of real property in the city, the rate of issuance of building permits both for single homes and multiple units, together with the quality of construction. In addition, the commercial and industrial development of the area was examined with consideration being given to the new stamping plant of the Chrysler Motor Company, and the extent of location of shopping centers in the area. In addition to the building construction, the population growth was considered and the characteristics and nature of the service area analyzed, not only with respect to shopping centers and retail stores and businesses, but with respect to vehicular traffic. In addition, the existing banking facilities were analyzed and the need for further banking services explored. The capital structure of the proposed bank was examined as well as the capabilities of the organizers. We have not, in the above summary, exhausted the contents of the file, but there is sufficient shown to indicate that the defendant did not fail to exercise his statutory discretion.

■■ The plaintiff's real complaint in this case, the essence of his charges against the Comptroller, is that the Comptroller reached a decision of which the plaintiff does not approve. But the fact is that there is often controversy in these situations. That is why the Comptroller is vested with the power to decide. We will assume, even, that the Comptroller was "wrong" in his decision. But there is no requirement in the law that he always be "right". His broad discretion includes the discretion to make a mistake. The theory behind the statutory scheme is that with enough mistakes collective action will ultimately come from the citizenry at the polls. Thus reviewability, save in extreme cases, is not entrusted to the courts.

■ At this point the plaintiff bank makes the point that, despite the Comptroller's showing of factors considered, if plaintiff can depose the Comptroller, as well as the Regional Comptroller, and the latter's assistant, Mr. Morgan, and question them concerning this matter, it can show that the dis-

2. Moore's Federal Practice Rules Pamphlet, p. 942 (1966).

cretion exercised was arbitrary and capricious, pointing as authority therefor, to our decision in Bank of Dearborn v. Saxon, supra. Plaintiff derives too much comfort from this case. Courts have stated repeatedly that the language and the holding of a decision must be read and interpreted in the light of the facts then before the court, a factor which plaintiff here seems entirely to overlook. In the *Bank of Dearborn* case, specific factual allegations were made, and supported, to the point that there had been an abuse of discretion with respect to the moving of a certain branch bank. In granting the relief asked, the court made it clear that although the Comptroller's decisions were not above reviewability, it should not be assumed that each and every decision made by him in the exercise of his broad discretion would justify a review of the exhaustive extent made in *Bank of Dearborn* case, particularly upon a vague complaint merely that a plaintiff is unhappy with the decision made. As we put it "This [the complaint made] is not the frivolous claim of an idle mischief maker. This is a citizen who has presented sufficient facts to warrant searching inquiry." (244 F.Supp. p. 402). The case, then, does not go to the extreme argued for it by plaintiff. What the plaintiff is actually arguing, with respect to deposing the Comptroller, is that if a plaintiff merely alleges the Comptroller to be arbitrary, he can thereupon question him to see whether or not he really is arbitrary, despite a showing in the administrative file of the exercise of a careful and conscientious discretion. There is no precedent for such a course of action, it is not warranted in the statutes, and it would be utterly destructive of the manifested Congressional intent to vest a broad discretion to the expertise of an administrative official in this sensitive and complex area of banking. Plaintiff has the cart before the horse. Plaintiff wants to depose the Comptroller to expose wrongdoing. The law is the other way around. If Plaintiff can show wrongdoing (not in the sense of proving it, but merely showing circumstances that to a reasonable view would indicate sham, subterfuge or similar wrong) he may then depose the Comptroller as required. *Bank of Dearborn*, supra.

The plaintiff urges upon us the recent case of Bank of Haw River v. Saxon, 257 F.Supp. 74, D.C.N.C.1966. In that case, the court held that "[s]ince the Comptroller denied the plaintiff a hearing", it would " 'judge de novo the validity, in fact and in law, of the Comptroller's final action.' " Without expressing any opinion upon whether or not a hearing is required to be held by the Comptroller, we note that in our case there was a hearing. Plaintiff complains that at such hearing it was not permitted to cross-examine witnesses. In reply it may be pointed out that there is no requirement in statutory or case law, of which we are aware, that an administrative "hearing" partakes of the aspects of a trial to the degree that the various interested parties may cross-examine each other, or the officials involved. We mention this case only to demonstrate that it has not been overlooked.

We have reviewed the defendant Comptroller's action to the extent required by the allegations made and find that he has exercised the discretion confided to him, as a matter of law. Thus, there is no factual issue presented, the motion for summary judgment is granted, and the motion for the depositions of Comptroller Saxon and his subordinates is denied.