**CITIZENS BANK OF HATTIESBURG,**
Hattiesburg, Mississippi, Plaintiff,

v.

**William B. CAMP, Comptroller of the Currency of the United States, Defendant.**

**No. 2131.**

United States District Court
S. D. Mississippi,
Hattiesburg Division.

Dec. 30, 1967.

M. M. Roberts, Hattiesburg, Miss., for Citizens Bank.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., for William B. Camp.

Francis T. Zachary, Hattiesburg, Miss., for Southern Nat. Bank, intervenor.

OPINION SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAN M. RUSSELL, Jr., District Judge.

Plaintiff, Citizens Bank of Hattiesburg, a Mississippi banking corporation, filed its complaint for declaratory judgment and other relief against the Comp-

troller of the Currency seeking to void the certification of a branch bank of Southern National Bank of Hattiesburg, and to cancel the certificate of authority previously issued by the Comptroller to the parent bank. The action is before this Court on defendant's motion for summary judgment, to which is attached the administrative file of the proceedings before the Comptroller, including the documents used in the approval of the establishment of the parent bank and those of the branch bank. The Court, in its consideration of the motion has examined all of the pleadings, as amended, the administrative file, plaintiff's counter-affidavit to the motion, and the briefs from both parties. Jurisdiction is invoked under Sections 1331, 1348 and 1394 of Title 28, Section 1001 et seq. of Title 5, and Section 27 of Title 12, U.S.C.A.

■ At the time this suit was filed, Civil Action No. 1998 was pending wherein Citizens Bank sought to attack the establishment of the parent bank of Southern National, approved by the certificate of the Comptroller dated August 18, 1965. Following a trial on the merits, District Judge Harold Cox rendered his opinion, dated January 18, 1967, sustaining the Comptroller's certificate of approval and dismissing the complaint of Citizens Bank. In his opinion, Judge Cox correctly stated the function of the reviewing Court: "Once it is determined by this Court that facts and circumstances exist on this record to bring into play the expertise of the Comptroller in making a choice as to disputed facts in the exercise of his discretion as to whether or not a new bank would be chartered, then the function of this Court is at an end. The Comptroller has exercised such a discretion in this case in creating this new bank and his action was not arbitrary, capricious or an abuse of discretion or otherwise not in accordance with law. * * * The action for a review, while adversary in nature, may be summary in fashion for a determination as to whether or not facts and circumstances

before the Comptroller afforded him an alternative for the exercise of a sound discretion in doing that which he did. The Court may not substitute its judgment for that of the Comptroller under the National Banking Act. The function of the Court is at an end when it is determined that the Comptroller has exercised a sound discretion based upon his expert judgment as to the existence or not of a public convenience and necessity for the new bank."

This decision of the District Court was affirmed by the Fifth Circuit Court of Appeals in an opinion recently rendered, 387 F.2d 375, dated December 4, 1967, and in which the Appeals Court held:

"We need not decide the question of whether a competing bank and stockholders of a second competing bank have standing to challenge the chartering of a new national bank for, assuming such standing arguendo, we agree with the district court that the complaint is without merit.

The present applicable statutes [1] and regulations [2] do not require the Comptroller to hold a formal adversary hearing in determining whether to approve the chartering of a new national bank.[3] The action of the Comptroller is not subject to review by trial de novo.[4] The court may not substitute its judgment for that of the Comptroller."

■ The above decision, affirming the District Court, precludes this Court from any consideration concerning the establishment and chartering of the parent bank of Southern National.

Citizen's Bank, filed its second suit against Southern National, Civil Action No. 2077, on April 15, 1966, in response to an application by Southern National for a branch bank. This application was withdrawn before action was taken by

1. 12 U.S.C.A. §§ 21, 22 and 26.

2. 12 C.F.R. 4.2.

3. Webster Groves Trust Co. v. Saxon, 8 Cir. 1966, 370 F.2d 381; 1 Davis, Administrative Law Treatise § 4.04.

4. See authorities cited in note 3.

the Comptroller, and in view of the withdrawal, Cause No. 2077 was dismissed as moot. The application for a branch bank having been reinstated, Citizens Bank filed this its third suit, seeking, among other things, to enjoin the Comptroller from approving its establishment, and, after its approval, evidenced by a certificate of authority issued February 13, 1967, amended its complaint seeking to void such approval.

Southern National submitted its application to establish a branch bank at 1301 Hardy Street in the City of Hattiesburg, and therein stated:

"The Branch is needed for convenience and necessity in extending the sound progressive banking and lending policies and full customer service initiated by this new charter in order to fully serve the economic needs of the community; to render convenient drive-in facilities and services to the residential area and particularly the customers of this Bank and is a necessity in order for this National Bank to compete in rendering drive-in facilities with the other Banks already serving this community."

At the request of the Comptroller, an investigation was made by one of his staff, W. C. Tiede, Deputy Regional Administrator of the Eighth National Bank Region. As a part of his investigation both the Mississippi State Comptroller and plaintiff were notified of the application. Mr. Tiede found that Southern National had total assets of $7,561,000.00 and capital of $1,031,000.00; that although the parent bank had been in operation for a little over one year, it had exceeded its projected estimate of deposits and loans almost threefold. Southern National's main office, with frontage of less than 20 feet and limited parking and drive-in facilities, was found inadequate to handle its 3,000 deposit and 4,000 loan accounts. Management

was found to have demonstrated leadership and ability to operate a progressive bank.

The branch site is in a well balanced residential and commercial neighborhood, with several large subdivisions having been recently developed in the area. It is located on a four-lane arterial thoroughfare, lined with retail and service establishments, and leading directly to the University of Southern Mississippi, an important adjunct to the city.

Hattiesburg is served by two other banks, Citizens Bank, a state bank with two branches, and First National with three branches. Only Citizens Bank, the plaintiff, protested Southern National's application, and it did not request a formal hearing.

This investigation and documents submitted by Southern National were evaluated by W. A. Robson, Regional Administrator for the Eighth National Bank Region who forwarded them for examination to the senior economist, the Director of the Bank Organization Division, and to the Deputy Comptroller in charge of branches and mergers, who recommended that the branch application be approved. On the basis of these records, the Comptroller approved the the application, the branch at 1301 Hardy Street was established and is now in operation.

■ The motion for summary judgment is considered in the light of the rules laid down in the aforesaid recent decision of the Fifth Circuit Court of Appeals pertaining to the parent bank. Just as Sections 26 and 27, Title 12, U.S. C.A., require a national bank to be approved by the Comptroller, evidenced by a certificate of approval, so may a branch bank be approved pursuant to Section 36. The only condition unlike that pertaining to the parent bank is the added requirement [1] that is establish-

---

1. 12 U.S.C.A. Sec. 36(c) (1) (2): "A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any

ment must be one which is expressly authorized to State banks by the law of the State in question.[2] The Comptroller found, as does this Court, that the location of the branch bank would have qualified under state laws as to location.

Plaintiff contends that the approval of the branch bank was an arbitrary and capricious decision in denying to plaintiff a formal hearing on an administrative level, that it violates "competitive equality" between state and national banks, and that there existed disputed facts, material to the issues, which preclude the propriety of a summary judgment.

■ As in Webster Groves Trust Co. v. Saxon, cited by the Fifth Circuit with respect to parent banks, no formal hearing is required for the approval of a branch bank. 1st National Bank of Smithfield, N. C. v. Saxon (1965), 352 F.2d 267; Bridgeport Fed. Savings & Loan Association v. Federal Home Loan Bank Board (1961), 199 F.Supp. 410. The current Comptroller in a speech before the Texas Bar Association, appearing in the July 11, 1967 issue of American Banker, conceded the necessity of formulating a procedure for formal hearings thusly:

"It would seem that the hearing procedures for handling such applications should by now be set, but the fact is that for almost 100 years from the founding of our office in 1863, until about 1963, the licensing functions of our office were conducted on an entirely informal conference basis without adversary proceedings. * * * Every court considering the question has held that there is no statutory or constitutional requirement for a formal adversary hearing prior to our action on an application. * * * Despite this long history of acceptance

of our informal approach to licensing matters, there has been considerable push toward more formality in recent years. The competition for choice locations in rapidly developing suburban areas has become increasingly intense with a corresponding increase in protests by competing institutions and conflicting applications for the same location. Other causes include an increasing number of applications for new bank charters with corresponding increased opposition by existing banks, as well as developments in the law concerning bank mergers. * * * In certain cases, however, on the request of an applicant or a protesting party we now schedule adversary hearings held usually in the regional office. While these hearings are not conducted with the full formality of an APA hearing, a verbatim transcript of the proceedings is taken and cross-examination by opposing parties is permitted.

In the near future it is our expectation that a final format for these adversary hearings will be published in the Federal Register. In these procedural regulations, we will do our best to serve the interests of fairness to all parties and at the same time not bog down the growth of the industry in a morass of administrative and judicial proceedings.

The facts in this instance show that plaintiff, as a protesting adversary, made no formal request for a hearing.

■ The Court finds no merit in plaintiff's protest that the fact that approval of a national bank branch would add to the total of national banks with more assets than those of state banks and thereby violate the principle of "competitive equality." There is no such

point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority af-

firmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.

2. Mississippi Code of 1942, Recompiled, Sections 5228 and 5229.

statutory restriction. Nor does this Court so interpret First National Bank of Logan, Utah v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed. 2d 343, aff. Walker Bank & Trust Co. v. Saxon, 10 Cir., 352 F.2d 90, relied on by plaintiff. The extent of that holding was to affirm the Tenth Circuit Court of Appeals' decision that the Comptroller of Currency could not authorize a national bank to establish a branch bank in a city, where, under Utah law, a state bank could not establish a branch unless it took over an existing bank which had been in operation for five years. No such state requirement applies here.

█ Disputed facts which plaintiff alleges were before the Comptroller, include population figures. Plaintiff claims they were exaggerated in Southern National's application. To the contrary, the population within the city was presently estimated at 38,100, on the basis of 1960 census records of 34,989, with an additional 6,900 adjacent thereto, all within the service area of the bank if not within the city limits. Plaintiff denied that the Comptroller took into consideration the location of two existing competing branch banks, yet an aerial photograph submitted to the Comptroller clearly shows their location on or near Broadway Drive. Other objections are similarly specious. As stated in Warren Bank v. Saxon, D.C., 263 F.Supp. 34, 38: "We will assume, even, that the Comptroller was 'wrong' in his decision. But there is no requirement in the law that he always be 'right'. His broad discretion includes the discretion to make a mistake."

This Court finds on the basis of the facts before the Comptroller that his action in approving the establishment of Southern National's branch bank at 1301 Hardy Street, Hattiesburg, Mississippi, was neither arbitrary, capricious, nor an abuse of discretion.

The motion for summary judgment is sustained and an order may be presented accordingly, with costs taxed to the plaintiff.