**BANK OF COMMERCE OF LAREDO,**
**Plaintiff-Appellant,**

v.

**CITY NATIONAL BANK OF LAREDO**
**et al., Defendants-Appellees.**

**No. 73–2217**
**Summary Calendar.**\*

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1973.

Rehearing Denied Oct. 25, 1973.

---

\* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y., 431 F.2d 409, Part I (5th Cir. 1970).

J. G. Hornberger, Laredo, Tex., for plaintiff-appellant.

Horace C. Hall, III, Laredo, Tex., for City Nat'l Bank, Hall, Sanchez, Magnon, Guerra & Zuniga.

George P. Kazen, Laredo, Tex., for Laredo Nat'l Bank, Mandel & Jacobs.

Anthony J. P. Farris, U. S. Atty., William L. Bowers, Jr., Asst. U. S. Atty., Houston, Tex., for Doman & Camp.

Morton Hollander, Ronald R. Glancz, Dept. of Justice, Civil Div., Washington, D. C., for Comptroller of Currency.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The Bank of Commerce of Laredo appeals from the district court's refusal to set aside the grant of a national bank charter by the Comptroller of the Currency of the United States to the City National Bank of Laredo. The Bank of Commerce contends that the trial court erred in denying it access to the discovery process, in refusing to order the Comptroller to explain the reasons for his approval of the charter application, and in granting defendant's motion for summary judgment. We affirm.

City National was organized as an affiliate of the Laredo National Bank, a competitor of the Bank of Commerce, which vigorously opposed the application from the beginning. Pursuant to City National's application, a national bank examiner from the Comptroller's office conducted a field investigation of the proposed new bank, its management and organizers, gathered and confirmed statistical data, talked to personnel from the various competitor banks, and interviewed businessmen in the proposed service area. Subsequently, he tendered written findings, including a comprehensive economic profile of the service area and its prospects, and recommended that the application be approved. At appellant's request, the Regional Comptroller of the Currency held a public hearing on the application, and following an examination of additional economic reports and other information proffered by the interested parties, he likewise recommended approval, furnishing written reasons for his action. Thereafter, the Comptroller and his staff reviewed the entire record and ultimately granted City National a certificate of authority to commence banking.

After these efforts in the administrative proceedings had proved unavailing, Bank of Commerce turned to the court below seeking a declaratory judgment that the Comptroller's approval of the charter application was unlawful, an injunction prohibiting City National and its organizers from participating in the banking business pursuant to the charter, and a trial *de novo* on the merits of City National's charter application. From fourteen grounds of unlawfulness alleged in plaintiff's wide ranging complaint, the district court distilled three general bases for the allegation that the Comptroller's action was arbitrary and capricious: (1) the procedure employed by the Comptroller was illegal; (2) his approval of the charter application circumvented the Texas prohibition against branch banking; and (3) the grant of a bank charter to City National violated the antitrust laws of the United States. After dismissing the complaint against Laredo National Bank and its executive officers, who had participated in the organization of City National, and against Michael Doman, The Regional Administrator of National Banks, for failure to state a claim upon which relief could be granted, that court denied appellant's request for a trial *de novo* and granted summary judgment for the remaining defendants, City National Bank, its organizers, and William B. Camp, Comptroller of the Currency. Neither ground (2) or (3) is urged by the Bank of Commerce on this appeal.

The Bank of Commerce alleges 37 specific arbitrary and capricious acts by the Comptroller and his staff. Furthermore, appellant complains that the trial court wrongfully denied its motion to depose and serve interrogatories on the Comptroller, several members of his staff, the organizers of City National, and the officers of Laredo National Bank who testified in favor of City National's application. Finally, in an attempt to tailor its appeal so as to invoke the relief ordered in Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), the Bank of Commerce contends that the Comptroller so failed to explain

his decision as to frustrate effective judicial review.

■ In Bank of Dearborn v. Saxon, 244 F.Supp. 394 (E.D. Mich. 1965), aff'd *sub nom.* Bank of Dearborn v. Manufacturers National Bank of Detroit, 377 F.2d 496 (6th Cir. 1967), the Comptroller approved the defendant bank's new charter application, which when coupled with the relocation of another established bank, permitted the defendant by sleight of hand to circumvent a Michigan statute regulating branch banking. Finding a prima facie case of sham and subterfuge, the district court overturned the Comptroller's approval of the application as an abuse of discretion and forced disclosure of the administrative file, denying a claim of privilege advanced by the Secretary of the Treasury. In Camp v. Pitts, *supra,* the Comptroller denied plaintiff's bank charter application with only a very cursory explanation. The Supreme Court held that if "there was such failure to explain administrative action as to frustrate effective judicial review, the remedy was not to hold a [trial] *de novo* . . . but . . . to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." 411 U.S. at 142, 93 S.Ct. at 1244. The Bank of Commerce asks this court to reverse and remand with instructions that the district court elicit further commentary from the Comtproller explaining his decision and accord appellant access to the discovery process.

Appellant's reliance on these decisions, however, is misconceived. The preponderant weight of judicial precedent bars plaintiffs from deposing the Comptroller or requiring him to answer interrogatories. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 1004–1005, 85 L.Ed. 1429 (1941); Warren Bank v. Saxon, 263 F.Supp. 34 (E.D. Mich. 1966), aff'd *sub nom.* Warren Bank v. Camp, 396 F.2d 52, 56 (6th Cir. 1968); Klanke v. Camp, 320 F.Supp. 1185 (S.D. Tex. 1970). The Supreme Court recently affirmed this policy in Camp v. Pitts, *supra,* stating that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." 411 U.S. at 142, 93 S.Ct. at 1244. Here, the fact that it had the entire administrative file before it fully enabled the district court to conclude that the Comptroller's decision was neither arbitrary nor capricious.

When juxtaposed to such a complete administrative record and the applicable principles of law, appellant's conclusory objections to the hearing officer's refusal to grant a continuance, to the absence of a formal adversary hearing, and to *ex parte* meetings between the Comptroller's staff and City National's organizers, clearly fail to make out a prima facie case of misconduct. In reliance on the literal wording of the National Banking Act, *see* 12 U.S.C. §§ 26, 27 (1970), no court has held that the Comptroller must hold an adversary hearing in passing upon bank charter applications, nor has any tribunal restricted the use of *ex parte* methods to obtain information from the banks and parties involved, even if such methods are utilized after a hearing has taken place. First National Bank of Fairbanks v. Camp, 465 F.2d 486, 603–604 (D.C. Cir. 1972), cert. denied, 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 256 (1973); Sterling National Bank of Davie v. Camp, 431 F.2d 514, 516 (5th Cir. 1970), cert. denied, 401 U.S. 925, 91 S.Ct. 879, 27 L.Ed.2d 829 (1971); Ramapo Bank v. Camp, 425 F.2d 333, 347–348 (3d Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970); Citizens Bank of Hattiesburg v. Camp, 387 F.2d 375 (5th Cir. 1967), cert. denied, 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 418 (1968). Here, the Bank of Commerce was afforded the opportunity of a public, albeit nonadversary, hearing in which to register its protest. The administrative file was left open for *ex parte* submissions by anyone so interested for five days thereafter. Furthermore, the refusal to grant a continuance was well within the ambit of the Comptroller's discretion. Viewed in their

overall context, these assertions simply do not warrant the conclusion that the procedure before the Comptroller was a sham and subterfuge. Thus, we accept the observation of the district judge that "the real crux of the matter is simply that [the Bank of Commerce] disagrees with the Comptroller's finding; . . . [appellant] seeks to persuade this court that it, rather than the Comptroller, has the right answers."

Similarly, in Warren Bank v. Saxon, *supra,* the same district court strictly limited application of its prior decision in Bank of Dearborn v. Saxon, *supra,* which the Bank of Commerce cites as controlling.

> The case, then, does not go to the extreme argued for it by plaintiff. What the plaintiff is actually arguing, with respect to deposing the Comptroller, is that if a plaintiff merely alleges the Comptroller to be arbitrary, he can thereupon question him to see whether or not he really is arbitrary, despite a showing in the administrative file of the exercise of a careful and conscientious discretion. There is no precedent for such a course of action, it is not warranted in the statutes, and it would be utterly destructive of the manifested Congressional intent to vest a broad discretion to the expertise of an administrative official in this sensitive and complex area of banking. Plaintiff has the cart before the horse. Plaintiff wants to depose the Comptroller to expose wrongdoing. The law is the other way around. If Plaintiff can show wrongdoing (not in the sense of proving it, but merely showing circumstances that to a reasonable view would indicate sham, subterfuge or similar wrong) he may then depose the Comptroller as required.

263 F.Supp. at 39.

■ A punctilious review of the administrative record, which of course is the same as was before the court below, also fails to indicate any such paucity of administrative explanation as would frustrate effective judicial review of the Comptroller's action. The district court correctly deferred to the Comptroller's expertise where the administrative record adequately explained and justified his decision to grant a national bank charter. *See* First National Bank of Southaven v. Camp, 471 F.2d 1322, 1326–1327 (5th Cir. 1973). Here that voluminous record surely indicated the determinative reason for the final agency action: a finding that the new bank was soundly organized, capitalized and managed and constituted a sound economic venture in light of the banking needs and services already available in the surrounding community. When findings of fact, rendered contemporaneously with the concomitant administrative decision, are subsequently available, a reviewing court may not require the agency officials who participated in that decision to give testimony explaining their action unless there has been a strong showing of bad faith or improper behavior. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). As stated by the Court in Camp v. Pitts, *supra,* also relied on by appellant:

> The validity of the Comptroller's action must, therefore, stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the Comptroller's decision must be vacated and the matter remanded to him for further consideration. It is in this context that the Court of Appeals should determine whether and to what extent, in the light of the administrative record, further explanation is necessary to a proper assessment of the agency's decision.

411 U.S. at 143, 93 S.Ct. at 1244 (citations omitted). The appellant's assertions of misconduct and collusion are wholly refuted by the record.

■ Lastly, the Bank of Commerce contends that the Comptroller abused his discretion in approving City National's charter application and that this charge

was inappropriate for summary disposition by the court below. When reviewing a case disposed of under Fed.R.Civ. P. 56, an appellate court must apply the same general standard as that initially employed by the trial court—whether there is any genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. 10 C. Wright & A. Miller, Federal Practice and Procedure § 2716, at 430 (1973). Moreover, when a plaintiff who has no right to a trial *de novo* brings an action to review an administrative record which is before the reviewing court, "the case is ripe for summary disposition, for whether the order is supported by sufficient evidence, under the applicable statutory standard, or is otherwise legally assailable, involve matters of law." 6 J. Moore, Federal Practice ¶ 56.17[3], at 2472 (1965). The appropriate legal standard for conducting such review is that established by the legislation authorizing the agency action and the appurtenant provisions of the Administrative Procedure Act.

The National Banking Act, 12 U.S.C. § 21 *et seq.* (1970), which authorizes the Comptroller to grant new certificates of authority to commence banking, accords him broad discretion to approve or reject new charter applications. *See* 12 U.S.C. §§ 26, 27 (1970). Since neither the National Banking Act nor the Administrative Procedure Act, 5 U. S.C. §§ 701–706 (1970), requires the Comptroller to conduct a hearing or make formal findings when passing upon new bank charter applications, 5 U.S.C. § 557 (1970); 12 U.S.C. §§ 26, 27 (1970), the appropriate standard for judicial review is not the "substantial evidence" test, which applies when findings made on a hearing record are to be reviewed, 5 U.S.C. § 706(2)(E) (1970); rather, the inquiry is whether the Comptroller's adjudication was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Camp v. Pitts, *supra*; Sterling National Bank of Davie v. Camp, *supra*; Citizens Bank of Hatties-

burg v. Camp, *supra*. *See* Investment Company Institute v. Camp, 401 U.S. 617, 626, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971). After reviewing the Comptroller's administrative file and appellant's pleadings and briefs, the district court applied the required test *in haec verba*, finding "that the Comptroller's decision was not arbitrary, capricious, or otherwise not in accordance with law." Our independent review of the entire record on appeal, including the administrative file and other exhibits, confirms that this decision was clearly correct.

Since the record provided a substantial basis for the agency action and foreclosed the existence of any material fact issues, the entry of summary judgment was entirely proper. Indeed, such summary dispositions are the form commonly employed in reviews of similar Comptroller action. *See* Camp v. Pitts, *supra;* First National Bank of Southaven v. Camp, *supra*; First National Bank of Crown Point v. Camp, 463 F.2d 595 (7th Cir. 1972); Sterling National Bank of Davie v. Camp, *supra*; Warren Bank v. Camp, *supra*.

The decision of the district court is Affirmed.