**NATIONAL BANK OF McKEESPORT and Peoples Union Bank and Trust Company, Plaintiffs,**

v.

**John J. SAXON, Comptroller of the Currency of the United States and Mellon National Bank and Trust Company, Defendants.**

**Civ. A. No. 66–199.**

United States District Court
W. D. Pennsylvania.
May 31, 1967.

J. Paul Farrell, McAllister & McAllister, McKeesport, Pa., for plaintiffs.

Gustave Diamond, U. S. Atty., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, District Judge.

This matter involves motions for summary judgment on the record filed by both of the within defendants.

The plaintiffs have filed a complaint for declaratory judgment asking, among other things, for injunctive relief to restrain the Comptroller from granting a certificate to operate a branch bank to the defendant Mellon National Bank and Trust Company (Mellon Bank) and injunctive relief against the Mellon Bank from operating such a branch in McKeesport, Pennsylvania.

McKeesport, Pennsylvania, is a community of about 80,000 people located at the confluence of the Monongahela-Youghiogheny Rivers (known as the "Mon-Yough" Region). The Mon-Yough Region has traditionally maintained a separate identity from the nearby Pittsburgh and Allegheny County area, even though McKeesport is located in Allegheny County.

The National Bank of McKeesport, a plaintiff in this action, is a national bank having its principal place of business in McKeesport, Pennsylvania, with several branches in the "Mon-Yough" area. The Peoples Union Bank and Trust Company, another plaintiff in this action, is a state bank organized under Pennsylvania law, having its principal place of business in McKeesport, with branches located in the surrounding "Mon-Yough" area.

Defendants are the Comptroller of the Currency of the United States, a federal officer, and Mellon Bank.

The defendant, Mellon Bank, is a national bank, having its principal place of business in Pittsburgh, and according to the plaintiffs, it operates nearly one hundred branches in the surrounding six county area. The affidavit of Reed H. Albig, President of National Bank of McKeesport, indicates that Mellon Bank's deposits and loans constitute more than fifty percent of deposits and loans in all banks located in the six county area.

After purchasing a certain piece of property in McKeesport, Mellon Bank, on June 8, 1964, applied to the Comptroller of Currency for a certificate to operate a branch office. The Deputy Comptroller, after conference with protesting banks and investigation by his staff, indicated on December 27, 1965, that a branch certificate would be issued to operate a branch on that property.

The plaintiffs filed the within complaint on February 19, 1966. By agreement of the parties, the proceedings were stayed to allow the Comptroller to conduct further hearings to determine the appropriateness of issuing Mellon Bank such a branch certificate. Hearings were held on May 16 and 17, 1966, and the Comptroller filed further findings on November 25, 1966. In February 1967, the Comptroller indicated that a certificate was to be issued thereby removing the stay in the proceedings of this law suit. As a result of such hearing the plaintiffs now admit that the original allegation of lack of due process in the original administrative proceeding has been disposed of.

The defendants have moved for summary judgment on the record before the Comptroller, asserting that there "is no genuine issue of fact" open to establish that the Comptroller's decision was arbitrary and capricious.

The defendants argue that the Comptroller's opinion demonstrates as a matter of law that all of the Pennsylvania requirements for the issuance of a branch bank certificate to Mellon Bank were met in this particular instance. Defendants argue that there was ample evidence presented at the two hearings from which the Comptroller could find that the Mellon Branch would provide a useful public service in McKeesport. The defendants further contend that the determination of a Comptroller in the granting of a branch bank certificate is a discretionary matter and that 5 U.S.C. § 1009 of the Administrative Procedure Act excepts from judicial review "(2) agency action * * * committed to agency discretion."

The plaintiffs oppose the defendants' motion on a three-fold basis; one, that the Comptroller failed to consider certain requirements of branch banking under Pennsylvania law as he is obliged to do under 12 U.S.C.A. § 36(c); two, the Comptroller failed to consider overwhelming evidence presented at the hearings which demonstrated that no additional banking services were needed in the McKeesport area; and three, the Comptroller acted capriciously in not considering the effect of Mellon Bank's opening a branch in McKeesport under the various anti-trust laws.

The guidelines to be followed by the Comptroller in deciding on the appropriateness of granting a certificate to a national bank to operate a branch bank are established by 12 U.S.C.A. § 36 (c). This federal statute requires the Comptroller generally to grant branches to national banks in those instances where the State Banking Authority in the state where the branch is to be located would grant a certificate to a state bank to open such a branch. Behind this statute was a congressional intention to foster a parity between the granting of certificates for branches of national banks and the granting of certificates for branches of state banks. First National Bank of Logan v. Walker Bank & Trust Co., 385 U.S. 252, 261, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966).

The plaintiffs argue that there is an issue of fact as to whether the Comptroller found that this branch bank was needed in McKeesport. The Pennsylvania statute, 7 P.S. §§ 904, 905, requires

that such a need be established in the area where the branch is to be located before the Pennsylvania authorities grant a state bank a certificate to operate a branch.

While the Comptroller in considering the state requirements when granting a bank a certificate to operate a branch must find that the branch is needed in the community where it is to be located, the Pennsylvania law does not specify how the need for a branch bank is to be determined or how the finding is to be made.

 The Court finds that the Comptroller found a need for Mellon Bank's branch in McKeesport, because of the following language in the Comptroller's opinion:

" * * * there is every indication that this competition will promote the public interest rather than have a deteriorating effect upon it.

 * * * * * *

* * * the applicant is well able to sustain the burden incident to the establishment of a new branch and that, accordingly the public interest would be served by approval of Mellon National's branch application."

While the Comptroller did not say specifically that he found that the branch was needed under the standards established by Pennsylvania law, the court does not feel that such a finding is necessary in the light of the fact that Pennsylvania establishes no specific standards for their authorities to determine the need for branch banks. The court finds that the Comptroller did find a need for this branch bank in McKeesport and that this was all that was required of him, assuming that all other requirements of the state banking laws were met, as they were in this instance.

 The plaintiffs urge that the First National Bank of Logan v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966) controls the present situation. There it was held that the Comptroller must abide by a specific requirement of Utah law in branch bank-

ing. The situation in *Walker* is inapposite to the one presented here. In *Walker* the Comptroller ignored, in granting a national bank a branch certificate, a specific Utah requirement, saying that it did not apply to a branch certificate for national banks. The Comptroller in the present situation followed all the specific Pennsylvania requirements. The fact that he did not set these forth in specific findings, in his opinion granting the certificate, does not control the legitimacy of his determination. He found that additional bank services would serve the public interest of the McKeesport area. We feel that the finding satisfies the Federal statutory requirement of observance of state standards.

 The plaintiffs further argue that the Comptroller's finding that a branch bank would serve the public interest in McKeesport was arbitrary, capricious, and against the weight of the evidence presented for his determination. Apart from defendants' argument as to the application of the Administrative Procedure Act, 5 U.S.C.A. § 1009, the court finds that the Comptroller was presented with substantial evidence from which he could determine that additional banking services were needed in the McKeesport area. This evidence included the fact that two branch banks had been opened by the plaintiffs in this action in the "Mon-Yough" area since Mellon Bank applied for its certificate.

### ANTI-TRUST THEORY

The plaintiffs also contend that the Comptroller of the Currency abused his discretion because of his failure to consider the anti-trust laws in granting the Mellon Bank such a certificate. In short, the plaintiffs assert that the Comptroller should have observed the Anti-Trust laws and cases decided thereunder, especially those relating to bank mergers such as United States v. Philadelphia Nat. Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915; United States v. 1st Natl. Bank & Trust Co. of Lexington, 376 U.S. 665, 84 S.Ct. 1033, 12 L.Ed.2d

1, and the more recent United States v. 1st City Natl. Bank of Houston (United States v. Provident Natl. Bank et al.), 386 U.S. 361, 87 S.Ct. 1088, 18 L.Ed.2d 151 (March 27, 1967).

 The plaintiffs' argument fails to convince us for several reasons. 12 U.S. C.A. § 36(c) nowhere specifies any requirement that the Comptroller look to any other laws of the United States in granting branch bank certificates. The 1966 Amendment to the Bank Merger Act of 1960 specifically provides that the Comptroller look to such anti-trust laws in approving mergers, but no such provision is included in the Comptroller's guideline to approve branches. (12 U.S.C. § 36(c)). The fact that Congress amended the one provision, and not the other, indicates a Congressional intent to allow other federal agencies to enforce the anti-trust laws when the question included branch banking.

Furthermore, all of the cases cited by plaintiffs to support its anti-trust contention are cases involving bank mergers. We have noted the different statutory treatment given to approval of mergers from the approval of branches. The distinction is particularly marked in United States v. Philadelphia National Bank, 374 U.S. 321, p. 370, 83 S.Ct. 1715, p. 1745, 10 L.Ed.2d 915 (1963), where the Court notes that: " * * * corporate growth by internal expansion is socially preferable to growth by acquisition."

Finally, if the plaintiffs are attempting to plead a private anti-trust cause of action, the pleading is defective because the Comptroller of the Currency is improperly joined as a party-defendant. Nowhere in the statute or case law do we find any authority for bringing an anti-trust action against a Federal agency. If the plaintiffs wish to pursue a private anti-trust action against the Mellon Bank they should do so in a separate action against that defendant alone.

In reviewing the administrative record we find a full and complete record to support the administrative determination of the Comptroller. We find from the record before us that there is no genuine issue as to any material fact.

From the foregoing discussion we are convinced that defendants are entitled to judgment as a matter of law.