**FIRST NATIONAL BANK OF FAIR-BANKS, Plaintiff,**

v.

**William B. CAMP, Comptroller of the Currency of the United States, Defendant,**

v.

**FIRST NATIONAL BANK OF ANCHOR-AGE, Intervening Defendant.**

**Civ. A. No. CA 3702–70.**

United States District Court, District of Columbia.

May 14, 1971.

542

Max Barash, McCarty & Noone, Washington, D. C., Charles J. Clasby, Fairbanks, Alaska, for plaintiff.

John Austin, James F. Rutherford, Asst. U. S. Attys., Washington, D. C., for defendant.

John D. Hawke, Jr., Arnold & Porter, Washington, D. C., for intervening defendant.

## MEMORANDUM OPINION

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff, a national bank headquartered in Fairbanks, Alaska, brings this suit for declaratory judgment and injunctive relief contending that the defendant Comptroller of the Currency abused his discretion and violated his own procedural requirements by approving the application of intervenor, a national bank having its main office in Anchorage, Alaska, to open a branch in downtown Fairbanks. The parties have submitted the case on cross-motions for summary judgment.

On September 17, 1969 intervenor First National Bank of Anchorage (FNB Anchorage) filed an application with the Comptroller to establish a branch bank in the business district of Fairbanks, Alaska. The Comptroller notified plaintiff and every other bank conducting business in Fairbanks and the Director of the Division of Banking and Securities for the State of Alaska that the application had been filed and solicited their comments. A field investigation by a bank examiner was also undertaken.

On March 31, 1970 a hearing on the application was held in the Regional Comptroller's office in Portland, Oregon. Testimony of various protesting banks and the Director of the State Division of Banking and Securities was offered in opposition to the application. On June 30, 1970 the Comptroller denied the application of FNB Anchorage to open the branch.

On September 4, 1970 FNB Anchorage requested the Comptroller to reconsider its application. Objections to the reconsideration request were filed with the Comptroller by several banks and the State Division of Banking and Securities. The Comptroller made an investigation of the then current economic condition of Fairbanks and relevant events occurring after the filing of the original application.

On November 10, 1970, after reconsideration and in accord with the unanimous recommendations of his subordinate officials, the Comptroller notified FNB Anchorage that its application for permission to establish a branch in the business district of Fairbanks had been approved.

Plaintiff First National Bank of Fairbanks, whose main banking office has been located in the Fairbanks business district for many years, filed the complaint herein on December 18, 1970. Plaintiff contends that in granting the branch charter to FNB Anchorage the Comptroller abused his discretion and acted arbitrarily, capriciously and unreasonably. Plaintiff bases his contention on the grounds (1) that the Comptroller failed to consider Alaska bank branching law and policy, as required by the National Bank Act (12 U.S.C. § 36), and (2) that the Comptroller violated plaintiff's administrative due process.

Plaintiff alleges that it will lose substantial banking business if FNB Anchorage is permitted to operate the proposed branch and has submitted the affidavit of its president in support thereof. The plaintiff has standing to maintain this suit. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 23 L. Ed.2d 184 (1970).

### I

Plaintiff contends that the Comptroller must follow the binding and conclusive authority of both the Alaska statute and the interpretation of that statute by the State Banking Director that he would deny a state branch application in these same circumstances.

Congress has authorized the Comptroller of the Currency to approve the establishment and operation of branch offices by national banks "if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the

law of the State on State banks." (12 U.S.C. § 36(c) (2)). The Director of the Division of Banking and Securities of the State of Alaska is, in authorizing State banks to operate a branch, subject to the provisions of § 06.05.415 Alaska Statutes, which provide in pertinent part that

" * * * The department shall issue a certificate of authority to operate a branch bank * * * if (1) the department determines that the addition of the proposed facilities in the community is not detrimental to a sound banking system;

\* \* \* \* \* \*

(3) the name is not deceptively similar to that of another bank in the proposed community or otherwise misleading;

\* \* \* \* \* \* "

■ It is evident from the foregoing that Congress sought to maintain competitive equality between State and national banks. First National Bank of Logan, Utah v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed. 2d 343 (1966). The Comptroller argues that he is bound only by restrictions on capital and location imposed by State law. It is noted that the Alaska statute contains no restriction on location. In light of *Walker Bank*, however, which held that all provisions of the branching law of the State involved were absorbed into 12 U.S.C. § 36, that argument is no longer tenable.

■ At the Comptroller's public hearing in this case and in an affidavit filed with this Court, the State Banking Director has declared that based on his analysis of the general economic condition and the banking situation in the Fairbanks area, he would not now permit a State bank to open a new branch in Fairbanks and that he would not approve an application involving names so similar as "First National Bank of Anchorage" and "First National Bank of Fairbanks." Plaintiff suggests that the doctrine of competitive equality as enunciated in *Walker Bank* requires that the

Comptroller is bound by the official State policy as expressed by its Banking Director.

The authority of Congress to act in the field of national banking was settled in McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819). In the National Bank Act Congress delegated to the Comptroller the authority to approve "outside" branches of national banks, i. e. outside the city, town or village in which the main office is located if such banks could be established under the statute law of the state. 12 U.S.C. § 36 (c) (2).

In Union Savings Bank of Patchoque v. Saxon, 118 U.S.App.D.C. 296, 335 F.2d 718 (1964) it was contended that because the Comptroller's interpretation of the New York branching statute accorded with the interpretations of that statute by the New York banking authorities it met the requirements of 12 U.S.C. § 36(c). The Court held, however, that the clear and specific language of § 36(c) absorbs legislative enactments of the State, not administrative interpretations of those enactments. The interpretive declarations of the State Banking Director regarding § 06.05.415, Alaska Statutes, are not "statute law" which the Comptroller is required to follow in considering national bank branch applications under 12 U.S.C. § 36(c) (2).

■ Where Congress has committed a wide area of discretion calling for expert judgment to an administrative agency, judicial review of that expertise is necessarily limited. Securities and Exchange Commission v. New England Electric System, 390 U.S. 207, 88 S.Ct. 916, 19 L.Ed.2d 1042 (1968). The function of the court is not to conduct a hearing *de novo* on the evidence before the Comptroller but to determine whether or not there was some rational basis for the action taken. Udall v. Washington, Virginia and Maryland Coach Co., Inc., 130 U.S.App.D.C. 171, 398 F.2d 765 (1968), *cert. denied*, Washington, Va. and Md. Coach Co. v. United States, 393 U.S. 1017, 89 S.Ct. 622, 21 L.Ed.2d

561 (1969). This is the standard for judicial review set by the Administrative Procedure Act.

An examination of the record discloses that, prior to granting his approval, the Comptroller had conducted a hearing at which several protestants expressed their views, conducted a field investigation and accumulated extensive documentation regarding economic and bankings conditions in Alaska and in the Fairbanks area. He considered the present and future banking needs of that city and the effects of the proposed branch on its banking community, including the possibility of loss of banking business to plaintiff and other competitor banks.

In First Citizens Bank and Trust Company v. Camp, 409 F.2d 1086 (4 Cir. 1969), involving approval of a branch where the State law required that the branch "meet the needs and promote the convenience of the community to be served" and that the "solvency" of the branch be assured, the Court first found that the Comptroller was bound by those requirements and then noted that neither the State statute nor any decided cases define those concepts or provide any specificity as to the factors which would show the presence or absence of "needs and convenience."

No Alaska statute or cases have been found which define what is meant by "a sound banking system" or which suggest factors, proof of which would show that a proposed branch was or was not "detrimental to a sound banking system." In the absence of any binding State standard and because the Comptroller had sufficient evidence from which to determine whether or not the new branch would be detrimental to the soundness of Fairbanks' banking system, his construction of that criterion cannot be upset. That he determined the new branch would not be detrimental to sound banking is implicit in his approval.

No precedents have been found under Alaska law for the "deceptive name" provision. The Comptroller however has preconditioned his approval of the branch charter on the use of a distinctive designation by that branch to eliminate any possibility of confusion arising from name similarity. FNB Anchorage has agreed and undertaken to stress the name "Interior City Branch" predominantly, in its advertisements and other public representations concerning this banking office. It is obvious that the Comptroller considered himself bound by, and did follow, the "deceptive name" restriction in the Alaska statute. His determination that the use of a distinctive designation would satisfy that restriction is not improper or an abuse of discretion.

## II

As further grounds for requesting this Court to set aside the Comptroller's approval of the FNB Anchorage application, plaintiff claims that the Comptroller arbitrarily and capriciously violated its rights to administrative due process (1) in approving the branch for reasons not made public (2) in acquiescing in the applicant's refusal to testify and submit to cross-examination at the hearing and (3) in failing to accord the proper weight to the application and supporting data in light of the Comptroller's rules governing the hearing, with respect to witnesses who fail to testify.

The clear weight of authority holds that the Comptroller in considering branch bank applications is not subject to the hearing procedures found in the Administrative Procedure Act, 5 U. S.C. §§ 554–557, and that the same considerations which led Congress to exempt him from the necessity of holding a formal adversary hearing also excuse him from filing written opinions expressing his reasons for approval or denial, e. g., Sterling National Bank of Davie v. Camp, 431 F.2d 514, 517 (5 Cir. 1970); accord, National Bank of McKeesport v. Saxon, 268 F.Supp. 720, 723 (D.C.Pa.W.D.1967). There are no provisions in the National Bank Act branching section, 12 U.S.C. § 36, requiring that the Comptroller ei-

ther issue an opinion or make his reasons public.

Hearings conducted by the Comptroller have an investigative or fact-gathering, not a fact-finding purpose. First Citizens Bank and Trust Company v. Camp, *supra.*

█ The record discloses that at the hearing FNB Anchorage offered no oral testimony but rested on its application. Plaintiff and several other protestants, including the State Director of Banking and Securities, testified in opposition to the branch application. Plaintiff made no objection during the hearing to the refusal of FNB Anchorage to offer testimony or submit to cross-examination. Indeed plaintiff's president appeared at the hearing, which had been granted at the request of the protestants, without counsel.

There is no evidence in the record as to what weight the Comptroller accorded to the applicant's failure to offer testimony at the hearing. Plaintiff refers to the Comptroller's hearing procedures which provide in part:

> The refusal of a witness to submit to such questioning shall be considered by the Regional Administrator in determining the weight, if any, to be accorded that witness' testimony.

No objection was raised at the hearing to the applicant's reliance on previously submitted written testimony.

It does not follow from the approval of the application that the Comptroller accorded any weight or did not accord sufficient weight to the fact that the applicant failed to offer oral testimony at the hearing. That failure to testify was only one of the factors included in the extensive quantum of evidence upon which the Comptroller based his approval.

After oral argument by counsel and careful examination of the entire administrative proceedings, the motions for summary judgment and the supporting points and authorities, the Court finds that the Comptroller's approval of the branch application is substantially and rationally supported and is neither arbi-

trary, capricious nor unreasonable. The Court further finds that the Comptroller did not violate plaintiff's administrative due process.

Accordingly, it is this 14th day of May, 1971,

Adjudged that defendant's and intervenor's motions for summary judgment be and they are hereby granted and plaintiff's motion for summary judgment is denied. Plaintiff's motion for a preliminary injunction to restrain the Comptroller from issuing a certificate authorizing operation of the branch pending a decision on the merits is hereby rendered moot.

This memorandum opinion will constitute findings of fact and conclusions of law. Counsel for defendant will submit an appropriate order.