**FIRST NATIONAL BANK OF SOUTH-AVEN, Plaintiff-Appellant,**

v.

**William B. CAMP, Comptroller of the Currency of the United States, Defendant-Appellee, and Coahoma National Bank, Intervenor-Appellee.**

No. 72–1555.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1973.

Rubel L. Phillips, Jackson, Miss., Peter B. Work, Washington, D. C., for plaintiff-appellant.

Dorothy Kulig, Office of the Comptroller of the Currency, Treasury Dept., Patrick L. Gray, III, Asst. Atty. Gen., Justice Dept., Washington, D. C., H. M. Ray, U. S. Atty., Oxford, Miss., Walter H. Fleischer, Judith S. Feigin, Dept. of Justice, Washington, D. C., for defendant-appellee.

William H. Maynard, Clarksdale, Miss., for intervenor-appellee.

Before BELL, AINSWORTH and DYER, Circuit Judges.

AINSWORTH, Circuit Judge:

This is an appeal by plaintiff, First National Bank of Southaven, from a summary judgment in favor of defendant, William B. Camp, the Comptroller of the Currency of the United States, which upheld his decision allowing the establishment of a branch bank in Southaven, an unincorporated Mississippi community situated in DeSoto County near Memphis, Tennessee.[1] The issues on appeal are whether, under the National Bank Act, 12 U.S.C. § 36(c) and applicable Mississippi statutory law, a branch bank can be established in an unincorporated area such as Southaven, Mississippi, and whether the Comptroller's approval of the establishment of the branch bank at Southaven was arbitrary, capricious, or inconsistent with applicable state law.

Coahoma National Bank filed an application for a branch bank addressed to the Comptroller of the Currency in July 1970. The application was protested by First National Bank of Southaven, the only commercial bank in Southaven, and other financial institutions in DeSoto County. An administrative hearing was held in October 1970 and a complete record was made. The Comptroller's office also conducted a full field investigation by a national bank examiner. After reviewing the record and staff recommendations, the Comptroller approved the application in April 1971. In May 1971, Coahoma National sought permission to change the location within Southaven of the approved, unopened branch. First National again protested, and a further hearing was held in July 1971. At this hearing Coahoma National withdrew its request for change of location. The Comptroller then reconsidered Coahoma National's application for a Southaven branch and reaffirmed his original approval. First National sought to have the Comptroller's decision reversed in Federal District Court and summary judgment for the defendant Comptroller followed.

Southaven is 12 miles from Memphis and is one of the few suburban areas in that vicinity which has substantial desirable undeveloped land. The population of Southaven, estimated to be between 12,000 and 15,000, has increased markedly over the last decade and is expected to continue growing at a rate of 15 per cent annually for the next several

---

1. The cross-motions of plaintiff, First National Bank and Horace B. Steele, Mississippi State Comptroller (plaintiff-intervenor) for summary judgment were denied by the District Judge at the same time he granted summary judgment for defendant.

years. Residential construction is active. There are four shopping centers containing national retail stores. Southaven is a growing community and has several manufacturing plants, some of which plan expansion, and new industry is anticipated. Further residential and commercial development is projected. Southaven has one interstate and two intrastate highways, plus truck, rail, and air facilities. All of these factors indicate that substantial physical and financial growth may be expected to continue in Southaven.

First National is the only commercial bank in the primary service area of Southaven. It was established in 1966. Its loan limit is $60,000 per customer. The loan limit of Coahoma National, a large bank, is $250,000 per customer. Its proposed branch would offer full banking services, including a trust department and data processing services. These latter two services are not presently offered in the Southaven area. Additionally, Coahoma National's loan ceiling is substantially higher than that presently available in the area.

The Comptroller thus found that the Southaven area is economically sound and that the establishment of the proposed Coahoma National branch bank would serve public convenience and necessity. He also found that Coahoma National would provide additional banking facilities and capital resources, and would offer services not presently available in the area. He further found that beneficial competition would result, and that existing financial institutions in the surrounding area would not be harmed by Coahoma National's entry into the Southaven market.

The principal issue raised by appellant is whether Mississippi statutory law allows the establishment of a branch bank in an unincorporated area. The National Bank Act, 12 U.S.C. § 36(c), provides in pertinent part:

> A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: . . . (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.

We must, therefore, look to the statutory law of Mississippi to determine whether the establishment of a national branch bank is authorized in an unincorporated area in Mississippi such as Southaven.[2] The pertinent state provisions are found in the Mississippi Code of 1942. Section 5226 thereof requires that the establishment of the branch bank promote public convenience and necessity. Section 5227 states that the name of the branch bank is to include the name of the municipality in which the branch bank is domiciled. Section 5228 provides a lesser standard for branch offices than branch banks by excluding the extra capitalization requirement. It also provides that branch offices may be established in the county or adjacent county of the parent bank. Section 5229 establishes the territorial limits of a branch bank, and requires that the branch bank be within a 100-mile radius of the parent bank; that when there is another bank where the branch bank is to be located, there be no less than 3,100 population; that the parent bank have no more than fifteen branches. Section 5230 requires extra capitalization of the branch bank, in an

2. The Comptroller's approval of Coahoma National Bank's application under National Bank Act § 36(c) authorized establishment of a "branch." It is clear that this meant a branch bank at Southaven, DeSoto County, Mississippi, which is 69 miles from the main office of Coahoma National Bank at Clarksdale, Mississippi, in Coahoma County. Coahoma County is not physically adjacent to DeSoto County inasmuch as Tunica County separates the two counties.

amount at least equal to the minimum capital required of a unit bank.

Section 5229 is the only provision which specifically addresses itself to the location of branch banks. It provides that "Branch banks may be established within a radius of one hundred miles of the parent bank. . . ." The territorial requirement is the radius; no location within this radius is specified.[3] This section further provides that "no parent bank shall be permitted to establish a branch bank in any town or city of less than 3,100 population according to the last preceding Federal census where such town or city has one or more banks in operation." However, this provision does not limit branch banks to towns and cities, but states that in the event a branch bank is to be located in a town or city already having a bank, the population requirement must be met.

Appellant contends that the requirement that branch banks be located in municipalities is found by reading the several pertinent Mississippi statutory provisions together. We do not find that the provisions so read impose such a requirement.

Section 5227 reads: "The name of all branch banks in this state shall include the name of the parent bank, followed by the name of the municipality in which the branch is domiciled, . . . ." The verb form "is" is not mandatory language. The provision may presume, but does not require, location in a municipality.

Section 5230 requires extra capitalization at least equivalent to the minimum capital required of a unit bank "in the municipality in which such branch bank shall be established." "Shall" is mandatory language, yet to construe this provision as mandatory in the context here would result in a requirement that the branch bank must be established, and there is no duty imposed on any bank to establish a branch. The statute, however, does not say that the branch bank may be established, but that if it is, it must be established in a municipality.

We are not persuaded that Section 5228 limits branch banks to municipalities by inference. That section permits establishment of branch offices within the county or adjacent county of the parent bank, and states that "Such offices shall not be considered branch banks within the meaning of this act, and no additional capital shall be required therefor." The significance of the distinction between branch offices and branch banks, as it relates to this section, is that branch offices do not have to meet the higher standard of extra capitalization. The distinction does not relate to location.

We agree with the District Court that the use of the term "municipality" is descriptive only and is not a term of art. If the Mississippi legislature meant to restrict branch banks to incorporated areas, it did not include this restriction in the statute, and there is no reason to think that it would not have done so had it intended such a restriction.

Appellant contends that there is an administrative interpretation of Mississippi law as to location of branch banks, which consists of the state comptroller's interpretation that branch banks may not be established in unincorporated areas. However, there is no evidence that this interpretation had been rendered before the instant case arose. We do not find a long-standing administrative interpretation, nor would the

---

3. The District Court Judge analogizes the omission of limitation to municipalities in Section 5229 to the construction of Section 5228 by the Mississippi Supreme Court, which said:

> The appellant's contention that the statute does not give authority to establish a branch office in the county in which it is domiciled unless such branch office is established within a municipality reads into the statute a provision which is not therein. Such a provision could doubtless have been included by the Legislature, but it was not done. First Nat. Bank of Canton v. Canton Exchange Bank, 247 Miss. 757, 156 So.2d 580, 583 (1963).

Comptroller necessarily be bound by it if there were one.[4]

The policy underlying the Mississippi statutory provisions relating to branch banking is the promotion of sound banking practices. Approval of Coahoma National's application for a Southaven branch accords with this policy without violating any provision of the state's banking laws.

We find that the only territorial limitation on the establishment of a branch bank is that it be within a radius of 100 miles from the parent bank, as set forth in Section 5229. In the instant case, Coahoma National meets the requirements of this section. The Southaven branch is 69 miles from the parent bank, well within the 100-mile radius. The parent bank has only four branches, under the fifteen-branch limit. Southaven has a population of 12,000 to 15,000 people, greater than the 3,100 population requirement, should this requirement be extended to unincorporated areas.

As to appellant's second contention that the Comptroller's approval of the branch was arbitrary, capricious, or inconsistent with the Mississippi standard of promoting public convenience and necessity, we find that the Comptroller's decision is amply supported by substantial evidence that Coahoma National has complied with Section 5226. The demographic characteristics of Southaven indicate that the area will be benefited by the full range of services and the higher loan ceiling which Coahoma National proposes to offer. There is evidence that these services will be necessary to increased financial development in the area.[5] We find no error in the Comptroller's findings as upheld by the District Court.

We find the basis of the Comptroller's approval supported by the Administrative Findings.[6] In the recent case of Investment Co. Institute v. Camp, 401 U.S. 617, 626, 91 S.Ct. 1091, 1097, 28 L. Ed.2d 367 (1971), the Supreme Court said: "It is well settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute. The Comptroller of the Currency is charged with the enforcement of the banking laws to an extent that warrants the invocation of this principle with respect to his deliberative conclusions as to the meaning of these laws." See also First National Bank of Fairbanks v. Camp, D.D.C.1971,

---

4. "In Union Savings Bank of Patchoque v. Saxon, [118 U.S.App.D.C. 296], 335 F.2d 718 (1964) . . . [t]he Court held . . . that the clear and specific language of § 36(c) absorbs legislative enactments of the State, not administrative interpretations of those enactments. The interpretive declarations . . . are not 'statute law' which the Comptroller is required to follow in considering national bank branch applications under 12 U.S.C. § 36(c)(2)." First National Bank of Fairbanks v. Camp, D.D.C., 1971, 326 F. Supp. 541, 544.

5. Testimony in the transcript of the District Court proceedings indicates that a Southaven manufacturing company which plans expansion cannot meet the financial needs occasioned thereby under First National's $60,000 loan ceiling. Another Southaven industrial concern testified to existing need for trust services in the community. Moreover, there is ample authority holding that the provision of competition in the banking field is sufficient to meet the public convenience and necessity standard. See Clermont National Bank v. Citizensbank National Association, D.C. Ohio, 1971, 329 F.Supp. 1331, and cases cited therein.

6. The following pertinent conclusions were adopted by the Comptroller in approving the Coahoma National Bank application:

Currently, the First National Bank of Southaven is the only commercial bank located in the primary service area of the proposed branch. Applicant's entry in this area, with an estimated population of 20,000, will provide additional banking services, capital resources, and beneficial competition. Coahoma National Bank has a considerably larger lending limit than other banks in DeSoto County and in addition, applicant will provide other services such as trust services and data processing which are not readily available in the area. Therefore, it is believed that the establishment of this branch will meet the needs and promote the public advantage in Southaven.

326 F.Supp. 541.[7] We are satisfied that the Comptroller made such a reasonable construction of the regulatory statute here, for we reach the same conclusion ourselves. We find no abuse of discretion nor arbitrary or capricious action by the Comptroller in the facts and circumstances presented here.

■■ Accordingly, we hold with the Comptroller and the District Court that the statute law of Mississippi permits the establishment of a branch bank in an unincorporated area and does not restrict branches to municipalities, and that the public interest test for granting authority to establish the branch bank herein has been fully satisfied.

Affirmed.

7. *Cf.* First National Bank of Fairbanks v. Camp, D.C.Cir., 1972, 465 F.2d 586; First National Bank of Crown Point v. Camp, 7 Cir., 1972, 463 F.2d 595.