**LONG ISLAND BANK, Plaintiff,**

v.

**John G. HEIMANN, The Comptroller of the Currency, and Citibank, N.A., Defendants.**

**No. 79 Civ. 3468(GLG).**

United States District Court, S. D. New York.

Feb. 5, 1980.

---

Cullen & Dykman, Garden City, N. Y., for plaintiff; Peter J. Mastaglio, Charles M. Strain, Garden City, N. Y., of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant, Heimann, by William J. Hibsher, Asst. U. S. Atty., New York City.

Shearman & Sterling, New York City, for defendant, Citibank; Henry S. Weisburg, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

The Long Island Bank, which has a number of branches on Long Island, commenced this action seeking to reverse the approval of the Comptroller of Currency of the United States of an application filed by defendant Citibank allowing it to establish a branch in Commack, New York. The parties have cross-moved for summary judgment and the administrative record has been submitted for review.

Citibank's application was filed on January 4, 1979 and approved on May 31, 1979. It wished to establish a branch at 6098 Jericho Turnpike in Commack, which is in Suffolk County, New York. The proposed branch, in addition to offering the usual commercial banking services, would have 24-hours-a-day, 7-days-a-week banking through automated machines. It would be the first bank to offer such service in the proposed service area of the new branch.

The plaintiff, Long Island Bank, has a branch only 37 feet from Citibank's proposed branch. It filed a protest to the application on February 9, 1979 and requested a public hearing. This hearing was held on April 6, 1979 before the Regional Director for Corporate Activities of the Comptroller's office. The proceedings were transcribed and are part of the administrative record. Both banks were represented by counsel. Additional written statements were submitted thereafter. At the hearing and in its subsequent filings, the Long Island Bank questioned Citibank's projections of loans, deposits, and profitability, as well as the overall potential of the area to support an additional branch office. Moreover, it contended that the approval of the proposed branch would be contrary to section 29 of New York State's Banking Law as not promoting "the public convenience and advantage." These objections were overruled by the Regional Director, who found:

> Protestant's objections are considered self-serving and protective in nature. Although the area is presently served by 10 offices of financial institutions, the establishment of a branch by Citibank, N.A. would result in an additional convenient banking alternative as well as the added convenience of 24-hour per day, seven days per week banking, a service not presently available in the area. There was no information presented at the hearing that would indicate the establishment of the proposed branch would threaten the viability of Long Island Bank or any other bank in the proposed service area.

(Administrative Record at 8.) After the necessary administrative review, final approval was given to the application.

In this action the Long Island Bank raises a number of objections to the Comptroller's actions. Many of these are procedural and raise no legal issues worthy of discussion. Upon a review of the administrative record, the Court finds that all of the procedural requirements were satisfied.

The major issue pursued before this Court is whether there was a proper basis for the Comptroller's approval of the application in light of the substantial possibility that the new branch might drive the neighboring Long Island Bank branch (which was already marginal) out of business. The plaintiff argues that the finding of the Comptroller that the proposed branch would not "threaten the viability of Long Island Bank or any other bank in the proposed service area" overlooks the more im-

mediate consideration of whether the plaintiff's Commack Branch might have to close. Plaintiff contends that no finding was made in this regard or, if one implicitly was made, it was error to conclude that the public interest could be served where the branch of one bank would merely replace that of another.

At the outset, the parties differ concerning the standard for reviewing this type of administrative action. The plaintiff contends that there must be substantial evidence supporting the factual conclusions of the Comptroller. That clearly is not the law, at least in this circuit. The Second Circuit in *Hempstead Bank v. Smith*, 540 F.2d 57 (1976), noted that "any review is limited to the question of whether the decision was arbitrary, capricious or not in accordance with law in light of the administrative record." *Id.* at 60. (That decision, in turn, rests upon the Supreme Court holding in *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).)

Indeed, it is not necessary to look beyond the *Hempstead Bank* decision for much of the law governing this case. Besides passing on the standard of review, the court there also held that the Comptroller need not conduct formal hearings or make detailed findings and that a branch should be established only if "the banking structure in the community" would not be adversely affected and the public would be better served. *Id.* The court noted that an excess of banks in one area may be as detrimental to the public as a monopoly. *Id.* at 61. The essential holding of the case is that "the paramount consideration is the public interest and not the private interest" of individual banks. *Id.* at 60.

Plaintiff argues that, while the Comptroller noted that 24-hour banking would be introduced into the area by the proposed branch, he did not make a specific finding

that such services were needed. Such a finding is implicit. The advantages to bank customers in being able to obtain funds from their bank at any time of day or night, and on weekends or holidays, are obvious and constitute an important public service. There was, moreover, evidence of customer demand for this system throughout the metropolitan area. Indeed, the plaintiff's other argument, that its branch may go out of business because of its inability to compete, is supported by the popularity of 24-hour banking.*

The strongest argument made by plaintiff is that there may already be too many branches in the service area in question. If the findings of the Comptroller can be interpreted as concluding that the area was capable of supporting an additional branch, this Court must give deference to his expertise in these matters. *First National Bank of Fairbanks v. Camp*, 151 U.S.App.D.C. 1, 465 F.2d 586 (D.C.Cir.1972), *cert. denied*, 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 (1973). On the other hand, if his decision is read literally, as concluding only that the Long Island Bank would not be threatened even if its branch did go out of business, then an interesting question is presented.

Plaintiff argues that the Comptroller (who was required to apply New York law) must ascertain that the banking structure *in the community* will not be adversely affected. It is quite true that the phrase "in the community" appears in the *Hempstead Bank* opinion. 540 F.2d at 60. However, the issue as such was not raised in that case, nor, for that matter, does it appear to have been explicitly considered in any other case. Regardless of whether the Comptroller must consider the adverse effect on a single branch, rather than on a whole banking company or on the banking structure in general, the Comptroller's primary concern is necessarily with the public interest.

---

* The only adverse evidence offered was that another major bank had operated an automated banking terminal a year earlier which had not been doing well. However, that facility was located inside a supermarket, was not a full branch bank, and was only a satellite of a branch at another location. There was little evidence concerning the nature or availability of that terminal's facilities.

Unquestionably, the public interest is not well served by having the branch of one bank drive the branch of another bank out of business if the services afforded by both are identical or nearly so. Where the new branch offers different and desirable features, however, the fact that it may supplant an existing branch does not mean that the public interest is not being served. Were it otherwise, a branch in a rural area capable of supporting only one bank could never be challenged, regardless of the advantages to the public to be offered by the proposed new competitor. Consequently, even if we accept the plaintiff's arguments that the Comptroller did not consider the viability of the particular branch in question, and that the area is "overbanked," so that the plaintiff's branch may fail, the action of the Comptroller in approving the application cannot be considered arbitrary or capricious.

The defendants' motion for summary judgment is granted and the plaintiff's motion for summary judgment is denied. The action is dismissed. Judgment will enter for the defendants.

