MAPLEWOOD STATE BANK, a Minnesota banking corporation, Plaintiff;

v.

The COMPTROLLER OF the CURRENCY, Administrator of National Banks, an Agency of the United States; and Northwestern National Bank of St. Paul, a national banking corporation, Defendants.

Civ. No. 3–80–440.

United States District Court,
D. Minnesota,
Third Division.

April 6, 1981.

**1056**

Thomas W. Pugh, Thuet, Lynch & Pugh, South St. Paul, Minn., for plaintiff.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D.C., Thomas K. Berg, U. S. Atty., and Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., for The Comptroller of the Currency; Ronald R. Glancz and Donald N. Lamson, Washington, D.C., of counsel.

James B. Loken and Elizabeth L. Taylor, Faegre & Benson, Minneapolis, Minn., for Northwestern National Bank of St. Paul.

## MEMORANDUM AND ORDER

RENNER, District Judge.

This action seeks review of a decision by the Comptroller of the Currency approving an application by Northwestern National Bank of St. Paul (NWNB) to relocate a branch bank from St. Paul to Maplewood, Minnesota. Plaintiff Maplewood State Bank (MSB) asserts the Comptroller's action should be set aside because it is not rationally supported by the administrative record and is contrary to law. The case is submitted to the court on cross motions for summary judgment.

### I.

On July 8, 1979, NWNB filed its application with the Comptroller's Regional Administrator seeking to relocate an existing branch office located at 350 Robert Street, St. Paul, to a site located at the intersection of Beam Avenue and the east entrance of Beam Avenue to the Maplewood Mall, Maplewood. MSB, whose main office is near the proposed site, protested the application and requested an administrative hearing for the purpose of introducing testimony, cross-examining officers of the proposed facility, and presenting objections to the proposed branch. Following the submission of supplemental exhibits, an informal hearing was held by the Regional Administrator. At this hearing, NWNB and MSB offered documentary evidence and witness testimony. After the hearing, both parties submitted written statements.

On May 28, 1980, the Comptroller notified NWNB and MSB of the decision approving the application. On July 25, 1980, MSB filed this action challenging the Comptroller's approval. On November 10, 1980, MSB filed an Amended Complaint alleging that the Comptroller's approval is contrary to Minnesota law incorporated by reference into federal law, that NWNB is operating an excessive number of branch offices in violation of the applicable statutory law, and that the decision is arbitrary, capricious, and not supported by substantial evidence.

On January 21, 1981, the Comptroller served and filed the administrative record underlying his approval order, and on January 27 filed his motion for summary judgment, which NWNB joined. Subsequently, MSB also moved for summary judgment.

### II.

The appropriate standard for review of a decision of the Comptroller is whether the Comptroller's adjudication was "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *First National Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). In applying this standard, the focal point for judicial review is the administrative record al-

ready in existence, not a new record made in this Court. *Camp*, 411 U.S. at 142, 93 S.Ct. at 1244. Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis. The Court may not substitute its judgment for that of the agency. *First National Bank of Fayetteville*, 508 F.2d at 1375–78.

## III.

◼ Since MSB has no right to a trial de novo in this matter, the case is ripe for summary disposition. Whether the Comptroller's order is supported by a rational basis in the record involves matters of law. *Id.* at 1374 (quoting *Bank of Commerce of Laredo v. City National Bank of Laredo*, 484 F.2d 284, 289 (5th Cir. 1973), *cert. denied*, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974)). The parties agree summary judgment is appropriate at this time.

## IV.

◼ MSB challenges the Comptroller's approval of NWNB's proposed branch relocation, citing 12 U.S.C. § 36 and Minn.Stat. § 47.54, subd. 2. The Comptroller is required to approve the relocation of branch banks. 12 U.S.C. § 36. In deciding whether to approve an application for relocation of a branch facility, the Comptroller is required to follow the substantive provisions of state law. 12 U.S.C. § 36(c); *see State Bank of Fargo v. Merchants National Bank & Trust Co. of Fargo*, 593 F.2d 341, 343–44 (8th Cir. 1979); *St. Louis County National Bank v. Mercantile Trust Co. National Association*, 548 F.2d 716, 717–18 (8th Cir. 1976). The criteria under Minnesota law for the relocation of a detached facility is set forth in Minn.Stat. § 47.54, subd. 2:

(a) [T]he applicant bank meets current industry standards of capital adequacy, management quality, and asset condition, (b) the establishment of the proposed detached facility will improve the quality or increase the availability of banking services in the community to be served, and (c) the establishment of the proposed detached facility will not have an undue

adverse effect upon the solvency of existing financial institutions in the community to be served.

MSB contends that the record does not contain a rational basis from which the Comptroller could have concluded that these requirements were met. Specifically, it argues: (1) The application is deficient because it did not specify the person designated to manage the proposed facility or the person's qualifications for the position; (2) relocation of applicant's branch will not improve the quality nor increase the availability of banking services in the community to be served because there was no showing of any need for additional services; and (3) the proposed relocation will have undue adverse effect upon the solvency of MSB.

◼ MSB's first argument lacks weight since the Comptroller decided it is the management quality of the applicant bank, not of the branch's manager that is to be evaluated. In this regard, the Comptroller is not bound by two contrary state commissioner's opinions. *First National Bank of Fairbanks v. Camp*, 465 F.2d 586, 597 (D.C.Cir.1972), *cert. denied*, 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 (1973). The record shows that NWNB presented evidence concerning its managerial quality and expertise.

◼ Regarding MSB's second argument, NWNB introduced evidence of the need for additional banking services in the Maplewood primary service area and the improved quality and increased availability of services that will result from the relocation of NWNB's branch. Evaluation of this data is clearly within the expertise of the Comptroller. *See Long Island Bank v. Heimann*, 481 F.Supp. 510, 512 (S.D.N.Y. 1980).

◼ Likewise, in regard to MSB's third argument, the record shows an adequate basis for the Comptroller's conclusion that the solvency of MSB and other financial institutions in the service area would not be jeopardized by the relocation of the branch. Although MSB submitted contrary evidence on this issue, the Comptroller's evaluation and weighing of the evidence has not been

# 1058

shown to have been without a rational basis. Moreover, the Court is not free to substitute its opinion, even if it differs, for that of the Comptroller. *First National Bank of Fayetteville*, 508 F.2d at 1378; *Merchants & Planters Bank v. Smith*, 380 F.Supp. 354, 357 (E.D.Ark.1974), *aff'd per curiam*, 516 F.2d 355 (8th Cir. 1975).

## V.

 In its post-hearing statement, MSB raised, for the first time, the legality of NWNB's branching practices. MSB asserts that technological changes in NWNB's skyway operation substantially transformed its character and eliminated the factual basis for the Comptroller's 1975 determination that the facility was an extension of the main banking house and not a branch. The changes involved replacing television teller stations with automatic teller terminals. MSB argues the alteration transformed the facility from an extension into a detached facility resulting in three detached facilities, in violation of Minn.Stat. § 47.52, which only allows two detached facilities.

There is a fundamental difficulty with plaintiff's argument. Even if the Court accepts as true that the changes occurred, this is an insufficient basis to challenge the validity of the Comptroller's 1975 decision. The definitional difference between a detached banking facility and an extension of the main banking house is primarily one of location, not function. Minn.Stat. §§ 47.-51, .53. Thus, any technological changes are not relevant to the Comptroller's 1975 determination that the facility was an extension of the main banking house, which was made after the remand in *Driscoll v. Northwestern National Bank of St. Paul*, 484 F.2d 173 (8th Cir. 1973). Plaintiff has failed to establish the invalidity of the 1975 determination or the need to examine that determination at this time. There is certainly nothing in *Driscoll* that mandates a redetermination by the Comptroller of the status of the skyway facility upon a technological modification, which changes neither its location nor essential functions.

## VI.

The record of proceedings before the Comptroller convinces the Court that the Comptroller considered appropriate factors, that there is a rational basis for his decision, and that it was not arbitrary, capricious, irrational, or otherwise contrary to law.

Based on the foregoing, the briefs, and the record, IT IS HEREBY ORDERED that

(1) Defendants' motion for summary judgment is granted.

(2) Plaintiff's action is dismissed.

Let judgment be entered accordingly.